548 A.2d 611

**Mary Louise CUNNINGHAM, Appellee,**

v.

**Reese A. CUNNINGHAM, Appellant.**

Superior Court of Pennsylvania.

Argued May 4, 1988.

Filed Sept. 29, 1988.

John B. Wise, Pittsburgh, for appellant.

Robert Petrosky, Kittanning, for appellee.

Before CIRILLO, President Judge, BECK and POPOVICH, JJ:

BECK, Judge:

Reese and Mary Louise Cunningham were divorced after almost forty years of marriage. Extensive hearings were held before a master in divorce, who filed a report with his recommendations as to equitable distribution and alimony. Following review of the exceptions filed by Mr. Cunningham, the trial court issued an award of equitable distribution and alimony which Mr. Cunningham now challenges on appeal. We consider the issues he raises seriatim.

The standard by which we review an award of alimony and equitable distribution of marital property is abuse of discretion; unless the trial court has abused its discretion, we will not disturb its decision. *Vajda v. Vajda*, 337 Pa.Super. 573, 579, 487 A.2d 409, 412 (1985). We find that the trial court did not abuse its discretion and we affirm.

Mr. Cunningham first claims that the trial court erred in adopting the master's finding that he had an income of $2,000 per month. Mr. Cunningham's most recent income tax return showed a gross annual income of over $24,000, or approximately $2,000 per month. He claimed over $17,000 in deduction and depletion allowances. Mr. Cunningham challenges the trial court's refusal to

deduct any of the $17,000 he claimed in depreciation and depletion expenses from his gross income in arriving at an estimate of his disposable income.

It is well established that depreciation and depletion expenses, permitted under federal income tax law without proof of actual loss, will not automatically be deducted from gross income for purposes of determining awards of alimony and equitable distribution. In determining the financial responsibilities of the parties to a dissolving marriage, the court looks to the actual disposable income of the parties:

> [T]hat income must reflect actual available financial resources and not the oft-time fictional financial picture which develops as the result of depreciation deductions taken against ... income as permitted by the federal income tax laws. Otherwise put, "cash flow" ought to be considered and not federally taxed income.

*Commonwealth ex rel. Hagerty v. Eyster*, 286 Pa.Super. 562, 568–69, 429 A.2d 665, 668–69 (1981) (citations omitted). *Accord, Flory v. Flory*, 364 Pa.Super. 67, 527 A.2d 155 (1987); *Parkinson v. Parkinson*, 354 Pa.Super. 419, 512 A.2d 20 (1986).

Depreciation and depletion expenses should be deducted from gross income only where they reflect an actual reduction in the personal income of the party claiming the deductions, such as where, e.g., he or she actually expends funds to replace worn equipment or purchase new reserves. This is not the case here. Mr. Cunningham does not claim on appeal, nor did he claim below, that he in fact spent any of his $24,000 income to replace worn equipment or purchase new coal reserves. To the contrary, the couple's daughter, an accountant who prepared a financial analysis of the Cunninghams' coal company based on Mr. Cunningham's 1984 income tax return, testified that the depreciation and depletion claimed by her father did *not* represent any actual expenditures on his part.[1]

1. As to the dissent's claim that deduction from gross income is permitted where a business owner does not actually spend monies allocated for depreciation but merely sets them aside for future

Second, Mr. Cunningham claims that the trial court erred in refusing to consider the testimony given at the October 31, 1986 hearing on his Petition for Reduction of Alimony Pendente Lite in determining its distribution of marital property and final award of alimony. This hearing was held after the master had closed his hearings and issued his recommendation to the trial court, but before the trial court issued its final order. Mr. Cunningham claims that testimony given at the October 31, 1986 hearing established that his income for the first seven months of 1986 was considerably lower than had been reported in earlier financial information filed with the court. Additionally, he claims that testimony at that hearing established that the rental income his wife was receiving had increased from $175 per month to $190 per month.

As to Mr. Cunningham's income, the trial court did in fact consider his claim of decreased income in 1986. Even before Mr. Cunningham gave this testimony at the October 31 hearing, he had included this information in the Memorandum he filed with the master prior to the master's rendering his report. The court found that Mr. Cunningham's claims of reduced income were simply not credible, and adopted an income figure based on his 1984 income tax report. We will not disturb this determination of credibility on appeal.

The trial court did, however, refuse to consider the testimony given at the October 31 hearing regarding Mrs. Cunningham's increased rental income, on the ground that such evidence was outside the record. *See Eck v. Eck,* 327 Pa.Super. 334, 475 A.2d 825 (1985). The trial court erred in

replacement of worn equipment and replenishment of reserves, we are aware of no case that so holds. To the extent that such funds remained personally available to the business owner, they would still be a part of his or her disposable income, and therefore not properly deductible from income for purposes of determining alimony or equitable distribution. *Commonwealth ex rel. Maier v. Maier,* 274 Pa.Super. 580, 418 A.2d 558 (1980). In any event, Mr. Cunningham presented no evidence at trial, nor does he claim on appeal, that he in fact set aside any monies for future replacement of equipment or reserves.

so concluding, as the transcript of the October 31 hearing on Mr. Cunningham's petition for a reduction in alimony was in fact part of the official record in this action. We find that the trial court was correct on other grounds, however, and so affirm.

■ The respective roles of the master and the trial court in a divorce proceeding in which a master is used are set forth in Pa.R.Civ.P. 1920.55. This rule provides for a master to hear evidence and file his report and recommendations. The parties can then file exceptions to the master's report, after which "the court shall hear argument on the exceptions and enter an appropriate final decree." Pa. R.Civ.P. 1920.55(c) (Purdon 1987). This system suggests that, at least in counties in which no new hearing is held before the trial court, the trial court is limited to the evidence presented before the master. While the trial court is obliged to conduct a complete and independent review of the evidence when ruling on exceptions, *Rollman v. Rollman*, 280 Pa.Super. 399, 421 A.2d 755 (1980), its scope of review, like that of this court, is limited to the evidence received by the master.[2]

■ Mr. Cunningham next claims that the trial court erred in the valuations it placed on certain properties included in the award of equitable distribution. We disagree. A review of the record reveals that the master's valuations, adopted by the trial court, were based on the testimony of the parties and their experts. We find that the trial court did not abuse its discretion in this regard.

■ Mr. Cunningham also claims that the trial court erred in failing to include in its assessment of Mrs. Cunningham's current financial status various payments she may have received during the marriage (e.g., proceeds from the sale of jointly-owned property, mortgage payments, etc.). The trial court found that the payments in question

---

**2.** While in some cases a long delay between the master's hearing and the trial court's review may render the testimony given before the master stale and therefore require new hearings, *see Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988), such is not the case here.

were received during the course of the marriage and were presumably properly disbursed during the course of the marriage. The trial court did not abuse its discretion in finding that Mrs. Cunningham could not be charged with current possession of these assets.

Finally, Mr. Cunningham contends that the trial court erred in refusing to include contempt sanctions against Mrs. Cunningham in its order of equitable distribution and alimony. During the pendency of these proceedings, on November 18, 1986, Mrs. Cunningham was found to be in contempt of court for having violated an earlier court order. The violation consisted of subletting her part of the marital residence and permitting the tenants to use marital property. A hearing on sanctions was scheduled for January 2, 1987, but was cancelled. No further hearing was ever held or scheduled.

Mr. Cunningham then raised the issue of failure to impose sanctions for the contempt in the "Application for Reconsideration" that he filed with the trial court on May 22, 1987. Mr. Cunningham argues that the trial court "denied" his request for sanctions when it crossed out language in the proposed order he attached to his application for reconsideration that would have scheduled a date and time for a hearing on sanctions.

We find that this issue is not properly before this court and therefore refuse to consider its merits. The first time Mr. Cunningham raised this issue was in his application for reconsideration, filed after the trial court entered its final order on April 30, 1987. The procedure employed by Mr. Cunningham was improper and did not effectively present the issue to the trial court. Pa.R.Civ.P. 1920.55(c) prohibits the filing of post-trial motions in situations such as this, where the trial court did not hold a de novo hearing on exceptions, but merely reviewed evidence admitted before the master in determining its final order. *Benson v. Benson*, 357 Pa.Super. 166, 515 A.2d 917 (1986). Since this issue was never properly before the trial court, nor is it

addressed in the order appealed to this court, we do not consider it.

Order affirmed.

CIRILLO, President Judge, files dissenting opinion.

CIRILLO, President Judge, dissenting:

I respectfully disagree with the majority on the issue of the determination of Mr. Cunningham's net disposable income as it relates to the inclusion of one hundred percent of the depreciation deduction and depletion allowance shown on his 1984 federal tax return. While the court did not necessarily err in using the 1984 return as the primary basis for its determination of Mr. Cunningham's income or earning capacity, the fact remains that the reasons given for the court's determination of Mr. Cunningham's net income are not legally adequate. I agree with appellant that the arbitrary inclusion of one hundred per cent of these deductions unfairly impacted upon the equitable distribution order and the alimony award.

I question whether the master, and hence the court, had enough information to make the necessary assessment of Mr. Cunningham's true financial situation. A review of the record indicates that specific data that would have aided the master and the trial court in assessing Mr. Cunningham's true financial situation was not before the court. The lack of such data and the resulting hazy financial picture should not accrue to the benefit of either party at the expense of the other. This court traditionally takes with a grain of salt a divorcing breadwinner's claim of his "pathetic financial plight," *Commonwealth v. Miller*, 202 Pa.Super. 573, 578, 198 A.2d 373, 375 (1964), and has long recognized that some husbands approach the divorce process with something less than total financial candor. *Williams v. Williams*, 175 Pa.Super. 409, 412, 104 A.2d 499, 501 (1954). Nevertheless, the lack of concrete information does not excuse the feeble

analysis indulged in by the trial court in support of its determination.

To say, as the trial court did, that "[t]he income of Defendant is, indeed, extremely difficult to ascertain," that "[t]he evidence presented at the Master's hearing regarding Defendant's income was quite vague and inconclusive," and that "[t]he Court agrees with the Master that the term "business expense" [of which Mr. Cunningham had claimed a "substantial amount" on the one income and expense statement filed] is entirely too broad and vague to be useful in determining Defendant's true income," and then to conclude that a monthly income of $2,000.00 was "reasonable under the existing circumstances" is not grounded in sound legal reasoning. The only financial data cited by the court was an admitted monthly income of $1135.00, a 1984 net profit of $6188.52 and the depreciation and depletion deductions for the same year of $17,997.00. Beyond the statement that "depreciation and depletion are accounting terms which may not reflect Defendant's actual expenditures in a given year," the trial court gave no justification for including *all* of both allowable deductions. It appears to have focused on Mr. Cunningham's "actual expendable income" to the exclusion of other considerations.

It is manifestly unreasonable to presume that, because there is no evidence that actual contemporaneous expenditures were made in the year the depreciation and depletion were claimed, that the amount of those deductions can fairly be attributed to disposable income. To reason as the trial court did here would mean that, if the monies represented by depreciation and depletion allowances were not spent in the same year they are claimed, those monies are then available for figuring support, alimony and equitable distribution. There is no requirement that the allowances made for replacing equipment and acquiring new income-producing resources be spent for those ends in the same year the deductions are taken. To the contrary, these deductions are allowed to make certain that businesses can

set aside monies to make these expenditures as needed in the future. The fact that, by virtue of these deductions, Mr. Cunningham, a sole proprietor, may indeed have realized more net income than was reflected on his 1984 return does not translate into the conclusion that all of this net income is available for alimony or should be considered for equitable distribution purposes. It is not equitable to force a businessman to spend monies set aside for replacement of the tools and raw materials of his business in making alimony payments, nor is it equitable to reduce his share of marital assets because he has such funds available for the business.

Some portion of these monies must be viewed as business assets, allocated to the replacement of worn out equipment and exhausted natural resources, regardless of the form of the business. Mrs. Cunningham has no right to alimony drawn from, or to equitable distribution of, the business assets or funds; her rights are only with regard to those available to Mr. Cunningham personally, after the business has been taken into account. It must be remembered that it is the business which supports them both. Its continued existence is crucial to Mr. Cunningham's ability to earn income and, not coincidentally, to his ability to pay the alimony awarded.

The trial court erred as a matter of law in limiting its determination of Mr. Cunningham's net income to the factors it recites and in failing to take into account the other factors identified by our case law as important to this determination. For example, in *Commonwealth ex rel. Maier v. Maier*, 274 Pa.Super. 580, 418 A.2d 558 (1980), we recognized that only the portion of depreciation representing monies actually available to the defendant for his personal use should be taken into account when making a support award. *Id.*, 274 Pa.Superior Ct. at 585, 418 A.2d at 561. In *Commonwealth v. Miller, supra,* we stated:

In ascertaining the earning capacity of a defendant, the net income ordinarily should not be increased by the

entire amount of depreciation claimed in the tax return but by a part of it as determined from all the circumstances including the amount of depreciation claimed and the property depreciated.

*Id.* 202 Pa.Super. at 577, 198 A.2d at 375. In the case of real estate, for example, depreciation is more likely to represent truly available cash since real estate does not wear out to the point of needing to be replaced in order to maintain the viability of the investment. It generally increases in value, and depreciation allows an owner to maintain and improve the property, thereby insuring its market value, and to recover, over time, the investment capital. In Mr. Cunningham's case, however, it is equipment essential to his business that is being depreciated and the deductions allowed are more fairly viewed as going to the eventual replacement of that equipment. *See Lyday v. Lyday,* 360 Pa.Super. 16, 519 A.2d 967 (1986) and cases cited therein. Similarly, a portion of the depletion allowance may be justifiably excluded from Mr. Cunningham's net income. When his current coal reserves have been completely mined, he must be in a position to purchase new land or coal rights.

It may be that the $2000 per month attributed to Mr. Cunningham is reasonable; it may even be that it is too little notwithstanding the fact that there appears to be some evidence that Mr. Cunningham's business was experiencing a decline which began after the parties' separation. As we stated in *Commonwealth ex rel. Caplan v. Caplan,* 236 Pa.Super. 605, 346 A.2d 822 (1976), "[t]his Court has been careful to scrutinize an alleged decrease in salary or earnings where a defendant is in business for himself." *Id.* However, the trial court's determination cannot stand based on this record. I agree with appellant that the court proceeded to make its determination without sufficient facts and without taking into account all of the pertinent factors. *Commonwealth ex rel. ReDavid v. ReDavid,* 251 Pa.Super 93, 380 A.2d 398 (1977) (failure to inquire into business interests and transactions resulted in not properly evaluat-

ing all factors necessary to determine reasonableness of support order); *Parkinson v. Parkinson,* 354 Pa.Super. 419, 512 A.2d 20 (1986) (court should consider the full nature and extent of financial situation).

We have recognized that "income must reflect the actual available financial resources and not the offtime fictional financial picture which develops as the result of depreciation deductions taken ... as permitted by the federal income tax laws." *Lyday, supra* 360 Pa.Super. at 22, 519 A.2d at 970. It is just as much an endorsement of a "fictional financial picture" to disregard one hundred per cent of depreciation and depletion as it is to allow them one hundred per cent. In every case, the true income lies somewhere in between.

In conclusion, I believe that the trial court erred in determining Mr. Cunningham's net income and that this error may have negatively impacted upon the equitable distribution order and the alimony award. I would remand for a corrected determination of Mr. Cunningham's disposable income and, if necessary, a corresponding adjustment in the equitable distribution scheme and the alimony award. Further, in doing so, I would advise Mr. Cunningham that it serves the best interests of both parties for him to make available the information the court needs to make its determination and fashion appropriate relief. I would encourage him to provide past tax returns, business expense information, data on how much of the money represented by these deductions is being held aside and how much is, or will be, needed to replace equipment and to acquire new coal reserves in the future so that he can continue to operate what is and has been a viable business. As this court has previously recognized,

> Although depreciation must not be treated as an expense, neither can it be treated in the same category as net profit. If, for the purpose of complying with a court order, a man is compelled to expend or exhaust his capital, without opportunity to maintain and preserve that

which makes his business possible, it will eventually work to the detriment of both the parties.

*Williams, supra* 175 Pa.Super. at 413, 104 A.2d 499.