## Kress v. Kress

C.P. of Allegheny County, no. FD 95-11325.

*Richard K. Witchko,* for plaintiff.
*Roslyn Berger,* for defendant.

McVERRY, *J.,* February 11, 1999—The parties are plaintiff, Frederick A. Kress (Father), and defendant, Kay M. Kress (Mother). Mother filed a complaint for support of herself and the parties' two minor children, ages 16 and 11. (Tr. 4, 6.) The case was designated

complex and heard by a hearing officer, who issued her hearing summary and recommendation on August 4, 1998. Father filed exceptions to the hearing officer's recommendation. After argument on November 5, 1998, this court issued a final order which dismissed all exceptions. Father filed a timely appeal and his matters complained of on appeal are discussed below.

## 1. DEPRECIATION DEDUCTIONS

Father contends that the hearing officer erred by "allowing items that were properly expensed from the 1997 tax return to be added back" to Father's net earnings.

Father is a self-employed operator of an automobile service center known as Kress Service Center.[1] (Tr. 32, 63.) Father is also a partner in a real estate business known as Kress Enterprises with his father.[2] (Tr. 32-33.) In calculating Father's net income, the hearing officer added back to Father's earnings all of the business depreciation deductions ($19,037) reflected in the 1997 federal income tax return of Kress Service Center and one-half of the business depreciation deductions ($3,868) reflected in the 1997 federal income tax return of Kress Enterprises.

The Superior Court in *Cunningham v. Cunningham,* 378 Pa. Super. 280, 282, 548 A.2d 611, 613 (1988) held that depreciation deductions should be excluded from an individual's gross income *only* where such deductions are reflective of an actual reduction in per-

---

1. Kress Service Center is a partnership comprised of Father and his father, Alfred Kress. Although they are equal ownership partners, Father receives 100 percent of partnership distributions profits.

2. Kress Enterprises appears to be an equal ownership and distribution partnership. (Tr. 51.)

sonal income of the person claiming the deductions. In other words, depreciation deductions should customarily be added back to net income because the party's true cash flow includes the dollar amounts deducted for depreciation. In the present case, the hearing officer followed the holding of *Cunningham,* and found that the depreciation deductions claimed by Kress Service Center and one-half of the depreciation deductions claimed by Kress Enterprises should be added back to Father's net income because Father's actual cash flow included the amounts which had been deducted for depreciation on the 1997 federal income tax returns of the businesses.

The findings of the hearing officer regarding add-backs to net income were supported by Mother's expert witness, Thomas Listwak C.P.A., who testified and submitted a report regarding Father's net income in which he added back the business depreciation deductions. (Exhibit 6; Tr. 33.) Mr. Listwak testified that the depreciation deductions taken by both Kress Service Center (100 percent) and Kress Enterprises (50 percent) should be added back to Father's income because those amounts represented additional disposable income available to Father. (Tr. 31, 33-34.)

The add-back of $19,037 to Father's income represents the depreciation deductions taken for equipment, including an emissions analyzer, a truck and a tool box, used in the operation of Kress Service Center. (Tr. 34, 37.) Father argues that the add-back for the emissions analyzer was in error because $14,573 was actually expended for that equipment. However, the expenditure was not made by Father or Kress Service Center, but individually by Father's father, Alfred Kress, an owner/partner who does not receive any financial distributions or profits from Kress Service Center. (Tr.

37-38, 50-51, 53, 78.) The testimony regarding the purchase of the emissions analyzer by Alfred Kress was unclear as he did not testify that the money was a loan, nor did he present any formal documentation to prove that the purchase was a loan to the business. (Tr. 50, 53.) Father's accountant, Donald Farkas, testified that the purchase of the emissions analyzer by Alfred Kress was a loan (Tr. 83-85), although he also stated that he was only informed of a $14,000 note verbally, had never seen any written evidence of the note, did not know in fact whether a written note existed, and that "given the testimony of [Alfred] Kress [historically] being very generous to [Father], ... he probably wants the [money] back because of the divorce." (Tr. 85.) After hearing the foregoing testimony, the hearing officer concluded, "[The] fact that [neither Father nor Kress Service Center] didn't have to advance the cash has no bearing on whether 'paper expense' should be added back—in fact, more reason to add back." (Hearing summary at 2.)

The hearing officer's determination regarding the remaining depreciation deductions taken by Father through Kress Service Center is supported by the testimony of the accountant witnesses of both parties. Mr. Farkas conceded that the depreciation taken by Father represented a "non-cash deduction" which corroborated the testimony of Mr. Listwak that Father's depreciation deductions actually represent cash flow to Father. (Tr. 81-82.) Mr. Farkas also testified that his client, Father, took more money from the business than was reported as income on his 1997 tax return. (Tr. 81.) He explained that Father could do this "by having money left over from the previous year and depreciation" and by having personal expenses paid by Kress Service Center. (Tr. 81-82.)

The hearing officer's add-back of $3,868 to Father's income which represented 50 percent of the real estate depreciation deductions taken by Kress Enterprises was clearly appropriate. (Exhibit 2.) Depreciation deductions for real estate are added back to a person's income because real estate is an asset which generally appreciates, and therefore the cost of the real estate may be fully recovered upon resale. *Labar v. Labar,* 434 Pa. Super. 612, 620, 644 A.2d 777, 781 (1994). The *Labar* court explained that "taking a depreciation expense against [real estate] creates somewhat of a financial fiction by improperly deflating net income of the business." *Id.*

Based upon the testimony and evidence presented at the hearing, as well as the applicable case law, this court finds that the hearing officer acted properly in having added back to Father's net income the business depreciation deductions of Kress Service Center and Kress Enterprises.

## 2. CASH INCOME

Father claims that the hearing officer erred by imputing cash income to him. Upon review of the record, this court has determined that the hearing officer's assignment of cash income to Father was appropriate in view of Father's testimony of having had unreported cash income from repairing automobiles prior to the parties' separation. (Tr. 70-71.) In addition, the current bank records of Father reflected no evidence of cash withdrawals, nor any checks made payable to cash or to Father directly (Tr. 35) which substantiated Mother's testimony that Father received cash income from the business during the marriage. (Tr. 6, 12.) Mother explained that Father would often give her cash for spending money and that he paid for their entertainment in

cash. (Tr. 6, 21-22, 70.) At the time of the hearing, Father continued to periodically provide cash to the parties' children. (Tr. 27.)

Mr. Listwak testified that he added back $200 per week, or $10,400 annually as unreported cash allegedly received by Father. (Tr. 34.) Mr. Listwak based this figure on the cash nature of the business of Kress Service Center,[3] as well as Father's failure to demonstrate any withdrawals of cash from his personal bank accounts through MAC transactions or checks made payable to cash or to himself for cash. (Tr. 34-35.)

The hearing officer rejected Mr. Listwak's opinion that cash income of $200 per week or $10,400 per year should be imputed to Father. However, the hearing officer determined that "Husband acknowledged some unreported cash in earlier years but testimony does not support Wife's figure. Instead, $2,000 [per year] is more reasonable." (Hearing summary at 2.) This finding regarding cash income was properly within the discretion of the hearing officer and is adopted by this court.

### 3. THE FAIR MARKET RENTAL VALUE OF PROPERTY OCCUPIED SOLELY BY MOTHER

Father asserts that the hearing officer failed to add to Mother's income one-half of the fair market rental value of the marital residence in which she and the children reside. Initially, it is noteworthy that Father did not raise this issue before the hearing officer. Moreover, he expressly agreed with counsel for Mother that her net income was $799 per month which consisted

---

3. Mr. Listwak explained that Father's business receipts were 20 percent credit card, such that the remaining 80 percent of business income would have to have been either by check or cash. (Tr. 35-36.)

of $752 from employment and $37.21 from interest income. (Tr. 7, 88.)

Also the issue of potential credit to Father for Mother's occupancy of the marital residence is more properly addressed at equitable distribution. See *e.g., Trembach v. Trembach,* 419 Pa. Super. 80, 615 A.2d 33 (1992). Case law reflects that rental value may be awarded *at equitable distribution* where one party has exclusive occupancy of the marital residence during the pendency of the divorce proceedings. *Cohenour v. Cohenour,* 696 A.2d 201 (Pa. Super. 1997). (emphasis added)[4] Counsel cites no legal authority to support imputing rental income to an occupying spouse at a support hearing. The hearing officer and this court properly rejected Father's argument that Mother's income as calculated at the support hearing should have included one-half of the fair market rental value for her occupancy of the marital residence.

## 4. INCOME RECEIVED BY MOTHER FROM RENTAL PROPERTY

Father maintains that the hearing officer failed to attribute Mother with the $500 monthly rental income which she received from property owned by Father and his father, Alfred Kress.

The record is clear that Father and Alfred Kress are the owners of rental property located at 194 Butler Street. (Tr. 16, 29, 54, 57.) At the time of the hearing,

---

4. Rental credit is not mandatory. *Butler v. Butler,* 423 Pa. Super. 530, 621 A.2d 659 (1993). The rental value may be adjusted to reflect the occupant's share of the mortgage payments and related expenses, such as upkeep and maintenance. *Hutnik v. Hutnik,* 369 Pa. Super. 263, 535 A.2d 151 (1987).

Father collected the $500 monthly rental income from the Butler Street property, and deposited the money into Mother's bank account. (Tr. 18, 75.) From this bank account, Mother paid $377.50 toward the parties' second mortgage on the marital residence, which had been incurred to facilitate the purchase of the Butler Street rental property. (Tr. 16, 29, 57.) Mother also paid for the storage, water and rubbish expenses attendant to this rental property. (Tr. 19.) Given these facts, the monthly rental income received by Mother was offset by her payment of the mortgage and attendant expenses, such that the $500 deposited by Father in Mother's account each month was not truly income to Mother.

Significantly, the hearing officer altered the parties' arrangement regarding the Butler Street property by providing in her recommendation that Father "pay the $377.50 monthly mortgage on the marital residence from the $500 monthly rental income he receives." (Recommendation and hearing summary at 1.) The hearing officer explained that she did not then impute the $500 monthly rental income to Father because he has "to pay the $377.50 mortgage with these funds. Any unused excess [to be] dealt with at equitable distribution." (Recommendation and hearing summary at 2.)

Consistent with the above, the hearing officer and this court properly calculated Mother's income exclusive of the rental receipts from the Butler Street property.

The order of this court of November 5, 1998 should be affirmed.