KOURY, J.,
And now, this 23rd day of March, 2015, the court issues the following statement:
*175 On January 20, 2015, defendant B. S. filed and served upon this court a timely notice of appeal to the Superior Court of Pennsylvania from the order of court dated December 22,2014. On February 12,2015, pursuant to our request under Pennsylvania Rule of Appellate Procedure 1925(b), we received a statement of matters complained of on appeal.
For the reasons that follow, we respectfully suggest that defendant’s appeal lacks merit.
I. Factual and Procedural History
On June 13,2014, plaintiff S.S. filed a uniform support petition seeking child support for one child, S. B. S. (the “child”), who was bom in the United States on April 11, 2008. See petition for support, S. v. S., No. C-48DR-0079714 (C.P. Northampton County June 13, 2014) (“support petition”). Plaintiff and defendant were married in Pakistan on July 6, 2007, separated on November 20, 2011, and divorced in Pakistan on May 4, 2012.
Plaintiff resides in Texas and filed the petition for support with the child support division of the attorney general’s office (“Texas Support Office”) in Arlington, Texas. See support petition. Defendant resides in Easton, Northampton County, Pennsylvania. The Texas Support Office sent a child support enforcement transmittal to the Northampton County Domestic Relations Section on June 23,2014. See support petition. The parties were ordered to appear for a support conference on July 29, 2014.
On July 21,2014, defendant filed preliminary obj ections to plaintiff’s support petition. See preliminary objections, S. v. S., No. C-48-DR-0079714 (C.P. Northampton County July 21,2014). The parties appeared for a hearing *176 on the preliminary objections on August 25, 2014. See order of court dated August 12, 2014, S. v. S., No. C-48DR-0079714 (C.P. Northampton County Aug. 12, 2014). At the conclusion of the hearing, the parties were directed to file briefs in support of their respective legal positions regarding defendant’s preliminary objections. See order of court dated August 25, 2014, S. v. S., No. C-48DR-0079714 (C.P. Northampton County Aug. 25, 2014) (“August 2014 order”). On September 12,2014, the court, by the Honorable Paula A. Roscioli (“Judge Roscioli”),[1] overruled defendant’s preliminary objections to the support petition and scheduled a support conference for October 15, 2014. See order of court dated September 12, 2014, S. v. S, No. C-48-DR-0079714 (C.P. Northampton County Sept. 12, 2014).
Defendant appeared at the support conference before conference officer Marta E. Husovsky (“Husovsky”). Plaintiff was not required to appear. See summary of trier of fact, dated October 15, 2014 at 2, S. v. S., No. C-48DR-0079714 (C.P. Northampton County Oct. 15, 2014) (“Support conference summary”). Husovsky determined that plaintiff was unemployed but currently volunteered in a hospital in Texas. See support conference summary. It was noted that plaintiff was only temporarily in the United States. See id. Husovsky concluded that plaintiff could not obtain a physician’s salary in the United States because she was only temporarily in the United States, but was not medically unable to work. See id. (emphasis added). Therefore, Husovsky recommended that plaintiff be assessed a full-time income as a home health aide at $9.98 per hour as per the Pennsylvania Occupational Wage *177 Survey. See id. at 3 (emphasis added). On October 17, 2014, Judge Roscioli entered an order of support directing defendant to pay child support in the amount of $1,030.00 per month, allocated as $858.00 for basic support of the one child and $172.00 for arrears. See order of court dated October 17, 2014, S. v. S., No. C-48-DR-0079714 (C.P. Northampton County Oct. 17, 2014) (“October 2014 order”). The order was based on an assessed income for plaintiff in accordance with Husovsky’s recommendation and defendant’s income as determined from pay stubs submitted to the domestic relations section. See October 2014 order.
II. De Novo Hearing
On October 27,2014, defendant filed a written demand for a de novo hearing. See request for hearing de novo, S. v. S., No. C-48-DR-0079714 (C.P. Northampton County Oct. 27,2014). On December 10,2014, defendant and his counsel appeared, as did plaintiff (via telephone) and the Title IV-D advocate, attorney Stephen Mowrey.
At the hearing, attorney Mowrey stated on the record that “there’s a history here of family violence, so there may be certain questions that would be inappropriate based on that history.” See Notes of Transcript at 5:1-3, S. v. S., No. C-48-DR-0079714 (C.P. Northampton Co., Dec. 10, 2014) (“N.T.”). Plaintiff testified she had been in the United States since January 2014 but was not currently employed because she did not have permission to work in the United States. N.T. at 5:22-25; 6:14. While living in Pakistan, plaintiff was employed at the Liaquat National Hospital as a physician. See id. at 6:11-14.
Plaintiff stated that her sole intention in coming to the United States was to bring her daughter to safety as there *178 had been threats made against her life. See id. at 7:18-25. Plaintiff described the circumstances that led to her entry to the United States in January 2014, indicating that she received threatening calls while in Pakistan and, subsequently, contacted the United States Consulate. See id. at 20:7-8. She testified that the United States Consulate instructed her to bring her daughter, a United States citizen, to the United States and granted plaintiff an emergency visitor’s visa to do so. See id. at 20:10-21:1. Plaintiff testified that her visa was stamped with an expiration date of July 18, 2014, but she applied for, and received a stay until December 2014. See id. at 22:5-16. Plaintiff testified that she was in the process of filing for political asylum in the United States. See id. at 9:20-10:7. There was no testimony presented by defendant to contradict any of this testimony by plaintiff. See generally, N.T. While plaintiff did not present documentation to support this testimony at the time of the hearing, we found plaintiff’s testimony credible.
Plaintiff testified that she fears defendant. See id. at 22:22. She stated that she had seen last seen defendant in October 2014, when she met him in court in Texas. See id. at 26:18-20. Plaintiff provided a detailed description of an incident of abuse in which defendant had her pinned on the ground, was sitting on plaintiff’s chest with his knees on her hands and was strangling her while her daughter witnessed this incident. See id. at 27:18-28:9. She indicated that part of the reason she came to the United States was because of the issues with violence she had with her husband. See id. at 28:21-24. While defendant testified that there was no domestic violence in his relationship with plaintiff, we did not find this testimony credible. See id. at 31:18-23.
At the December 10, 2014 hearing, the entire *179 Northampton County Domestic Relations file was made part of the record. Included in the file is an April 21, 2014 letter from Safe Haven of Tarrant County in Arlington, Texas indicating that in February 2014 plaintiff initiated services with Safe Haven to seek counseling for emotional distress and domestic violence. The correspondence notes emotional, verbal, physical and sexual abuse. Also included in the file is a Texas Department of Family and Protective Services report confirmation that a representative of Safe Haven had reported the specific incident of abuse of which plaintiff testified. The report was submitted to the Department of Protective Services on March 5, 2014.
On December 22, 2014, the undersigned entered the order currently before the Superior Court. See order of court dated December 22, 2014, S. v. S., No. C-48-DR-0079714 (C.P. Northampton County Dec. 22, 2014) (“December 2014 order”). The order modified the October 17, 2014 Support Order and required defendant to make monthly support payments of $1,156.00 per month, allocated as $963.00 for basic support of one child and $193.00 for arrears, effective June 13,2014. See December 2014 order. Defendant’s liability for uncovered medical expenses was raised from 77% to 100%. See December 2014 order. The order indicates that the support amount was based upon plaintiff having $0.00 income due to her ineligibility to work legally in the United States. See December 2014 order. All other aspects of the October 17, 2014 order remained in effect. See December 2014 order.
III. Appeal to the Superior Court of Pennsylvania
As noted above, on February 12, 2015, defendant filed his statement of errors complained of on appeal. Defendant raised seven alleged errors:
*180 1. The trial court committed an error of law and abused its discretion in its order of court entered on December 22, 2014 in determining that plaintiff, S. S. has no income or an earning capacity, for purposes of calculating the defendant’s child support obligation, due to plaintiff’s ineligibility to work in the United States when she voluntarily entered the United States on a visitor’s visa.
2. The trial court committed an error of law and abused its discretion in its order of court entered on December 22, 2014 in failing to assess the plaintiff, S. S., with an earning capacity commensurate with that of a physician in the United States, as the plaintiff received medical training and a medical degree, she worked as a physician, and the plaintiff continues to be employable as a physician, and the plaintiff voluntarily came to the United States on a visitor’s visa, with full knowledge that she would not be able to legally work in the United States.
3. The trial court committed an error of law and abused its discretion in precluding defendant from having access to information regarding the mother and the child, including their whereabouts, without more than a mere assertion on the part of mother that there was prior domestic abuse, and therefore violated the requirements of the Interstate Uniform Support Petition (23 Pa.C.S.A. § 7311). Such an error and abuse of discretion precluded father from properly inquiring as to the circumstances, documentation, and factual allegations in this matter, which were pertinent to the petition for support.
4. The trial court committed an error of law and abused *181 its discretion when it permitted the support complaint in Texas to be heard through the interstate support system, where mother is not a United States citizen, does not have legal status to remain in the United States, and has become a financial burden to the courts in Texas and Pennsylvania to hear a matter when mother has essentially used the court system to obtain support when she has no authority to remain in the United States.
5. The trial court committed an error of law and abused its discretion when it relied on mother’s alleged immigration status in the United States without requiring proof thereof and disclosure to father, as a reason for not assigning her an earning capacity, as mother clearly has an earning capacity when she voluntarily left her physician position in Pakistan to enter the United States without the ability to legally work here.
6. The trial court committed an error of law and abused its discretion when it failed to consider that mother voluntarily left her employment in Pakistan and did not mitigate her losses by moving to a location in the world where she could not legally work, which is tantamount to voluntarily leaving her employment without cause.
7. The trial court committed an error of law and abused its discretion when it overruled the defendant’s preliminary objections to the plaintiff’s interstate uniform support petition, where the plaintiff failed to file an answer to the preliminary objections, and where the court failed to consider the Texas statute governing plaintiff’s basis for jurisdiction. (Tex. FA Code ann. § 159.210), which violated the defendant’s due process rights under the Fourteenth Amendment and denied defendant’s contest of registration or enforcement *182 pursuant to 23 Pa.C.S. § 7607.
See statement of errors complained of on appeal pursuant to Pa.R.C.P. § 1925(b), S. v. S. No. C-48-DR-0079714 (C.P. Northampton Co. Feb. 12, 2015) (“Defendant’s statement of errors”).
DISCUSSION
I. Standard of Review
In reviewing a child support order, the Superior Court is guided by the following standard:
When evaluating a support order, this court may only reverse the trial court’s determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one’s child is absolute, and the purpose of child support is to promote the child’s best interests.
Laws v. Laws, 758 A.2d 1226, 1228 (Pa. Super. 2000).
A. It was not an error of law or abuse of discretion to determine that plaintiff has no earning capacity and/or to not assess plaintiff the income of a physician in the United States.
In defendant’s statement of errors, alleged errors one, two, five and six focus on the court’s determination that *183 plaintiff does not currently have an income or an earning capacity. Defendant argues that plaintiff should have been assessed an income based upon her alleged earning capacity as a physician because plaintiff voluntarily left her employment as a doctor in Pakistan in order to come to the United States where she knew she would not be allowed to work. Based upon the record before the court, it is respectfully submitted that it was not an error of law or an abuse of discretion to use a $0.00 income for plaintiff in the calculation of the child support amount in this matter and to determine that plaintiff currently does not have an earning capacity.
Pennsylvania Rule of Civil Procedure No. 1910.16-2 governs the calculation of net income in the determination of child support. Subsection (d) of Rule 1910.16-2 provides, in relevant part, as follows:
(d) Reduced or Fluctuating Income.
(1) Voluntary Reduction of Income. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.
(2) Involuntary Reduction of, and Fluctuations in, Income. No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the *184 trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.
[[Image here]]
(4) Earning Capacity. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party’s earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.
Pa.R.C.P. No. 1910.16-2 (d). The core of defendant’s arguments in alleged errors one, two, five, and six is that plaintiff “voluntarily” entered the United States on a visitor’s visa, knowing that she would not be eligible to work legally while in the United States on the visitor’s visa, that she “voluntarily” left her position as a physician in Pakistan and that she left that employment voluntarily, without cause, and that her actions should result in a lower amount of child support from defendant. See defendant’s statement of matters complained of on appeal at ¶¶ 1, 2, *185 5, and 7. Contrary to defendant’s assertions, and upon the record before the court, we do not believe that plaintiff “voluntarily” reduced her income or left her job in Pakistan such that she should be assessed an income for the purposes of establishing child support in this matter.
Pa.R.C.P. No. 1910.16-2(d)(2) provides, in relevant part, as follows:
appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.
Pa.R.C.P. No. 1910.16-2(d). It is respectfully submitted that receiving threats to her life and her child’s life while in Pakistan, and being directed by the United States Consulate to bring the child to the United States constitutes an “employment situation over which [plaintiff] has no control.” Further, we determined that plaintiff had not taken the reduction in income “willfully... in an attempt to avoid or reduce” a support obligation or to obtain a greater amount of support from defendant. “[W]hen a parent has not voluntarily reduced his income to ‘circumvent his support obligation’ the court ‘can consider reducing the parent’s child support obligation.’” Smedley v. Lowman, 2 A.3d 1226, 1228 (Pa. Super. 2010) (citing Grigoruk v. Grigoruk, 912 A.2d 311, 313 (Pa. Super. 2006)). Upon further analysis, it is clear to the court that plaintiff did not voluntarily reduce her income, and, even if she had voluntarily reduced her income, she did not do so to *186 circumvent an obligation to support her daughter, but did so for the benefit and safety of her daughter.
Black’s Law Dictionary defines “voluntarily” as “[i]ntentionally; without coercion.” See Black’s Law Dictionary (10th ed. 2014, “voluntarily”). While plaintiff may have left her employment in Pakistan intentionally, she did not do so without coercion. Black’s defines “coercion” as “[compulsion of a free agent by physical, moral, or economic force or threat of physical force.” See Black’s Law Dictionary (10th ed. 2014, “coercion”). Plaintiff was most certainly coerced into coming to the United States. Plaintiff had suffered physical, emotional, verbal and sexual abuse at the hands of defendant. While in Pakistan, she received threatening telephone calls that, as testified to by plaintiff, indicated that her and her daughter’s life were in danger. At the direction of the United States Consulate, plaintiff brought the parties’ daughter to the United States, with plaintiff entering the country with a visitor’s visa.
In Grigoruk, the court noted that “[w]here a parent is fired for cause ... the court can consider reducing the parent’s child support obligation under Rule 1910.16(2) (d)(1) if the parent establishes that he or she attempted to mitigate lost income.” Gigoruk, 912 A.2d at 313. The courts have also noted that “[a] parent’s involuntary loss of income is a serious matter with obvious adverse repercussions on the economic welfare of the children, however, it is a loss which must be weathered.” Haley v. Haley, 549 A.2d 1316, 1318 (Pa. Super. 1988). In Haley, the court noted as follows:
If the parties had still been together when appellant was laid off, the family would have had to make do with what it had, all sharing to a commensurate degree in *187 the loss, rather than the father bearing all. The same should follow when the parents are separated, as here. Here, the record is clear that appellant was unemployed and actively seeking a job, without any type of earnings or capacity to earn other than his unemployment compensation during that period. This may not be likened to the cases wherein an obligor has voluntarily withdrawn from income producing endeavors or reduced his earnings out of malice or concealed earnings by hiding behind family corporate shields, unsubstantiated debts or unwarranted expenses.
Id. at 1318.
The Immigration and Nationality Act (“INA”) governs United States immigration law. The INA defines a business or pleasure visitor as follows:
an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure.
See 8 U.S.C § 1101(a)(15)(B). Section 41.31 of Title 22 of the Code of Federal Regulations (C.F.R.) identifies and explains the B-l and B-2 Visitor’s Visas:
(a) Classification. An alien is classifiable as a nonimmigrant visitor for business (B-l) or pleasure (B-2) if the consular officer is satisfied that the alien qualifies under the provisions of INA 101(a)(15)(B), and that:
*188 (1) The alien intends to leave the United States at the end of the temporary stay (consular officers are authorized, if departure of the alien as required by law does not seem fully assured, to require the posting of a bond with the Secretary of Homeland Security in a sufficient sum to ensure that at the end of the temporary visit, or upon failure to maintain temporary visitor status, or any status subsequently acquired under INA 248, the alien will depart from the United States);
(2) The alien has permission to enter a foreign country at the end of the temporary stay; and
(3) Adequate financial arrangements have been made to enable the alien to carry out the purpose of the visit to and departure from the United States.
22. C.F.R. § 41.31. Subsection (b) defines “business,” in relevant part, as “conventions, conferences, consultations and other legitimate activities of a commercial or professional nature. 22 C.F.R. § 41.31(b). It does not include local employment or labor for hire. See id. That section defines “pleasure” as legitimate activities of a recreational character, including tourism, amusement, visits with friends or relatives, rest, medical treatment, and activities of a fraternal, social, or service nature.” Id.
In accordance with the above statutes, the United States Department of State, Bureau of Consular Affairs, specifically notes on its website that numerous activities are prohibited by an individual in the United States on a Visitor’s Visa. See U.S. Visas: Visitor’s Visa, http:// travel.state.gov/content/visas/english/visit/visitor.html (last visited Mar. 20, 2015) (“U.S. Department of State Website”). Included in that list are study, employment and permanent residence in the United States. See U.S. *189 Department of State Website.
Upon review of the record before the court, as well as the applicable statutes, plaintiff involuntarily left her employment in Pakistan. She came to the United States on a visitor’s visa. While in the United States on the visitor’s visa, she is not legally permitted to work as a physician or in any other occupation. See U.S. Department of State Website. Therefore, it was not an error to assign plaintiff a $0.00 income in the calculation of the child support in this matter. Although plaintiff is not legally permitted to work in the United States and earn an income, we also note that plaintiff has attempted to improve her situation and mitigate her lost income. The domestic relations file contains a letter of recommendation from the medical facility at which plaintiff is currently volunteering. The file also contains correspondence from the director of that facility indicating that the facility intends to hire plaintiff if she is granted the legal authorization to work in the United States. Plaintiff testified at the hearing that she had extended her stay in the United States and that she was applying for political asylum in the United States. See N.T. at 9:20-10:6; 22:9-16. If plaintiff is granted political asylum or a more permanent status in the United States that allows her to work, plaintiff would be required to report that to domestic relations and defendant could petition for a modification of the support order.
Based upon the above, it was not an error of law or abuse of discretion to not assess plaintiff an earning capacity as a physician or as any other type of employee. Plaintiff is not legally allowed to work in the United States and she did not leave her employment in Pakistan voluntarily. Even if plaintiff did leave “voluntarily,” she did not do so for the purpose of avoiding child support or attempting to *190 increase the amount she would receive for her daughter. Plaintiff’s income was properly determined to be $0.00, and that amount was properly utilized in the calculation of defendant’s support obligation. As such, alleged errors one, two, five, and six contained in defendant’s statement of errors complained of on appeal are without merit.
B. It was not an error of law or abuse of discretion to preclude defendant from having access to information regarding plaintiff and the child, including specifically their whereabouts.
In alleged error number three, defendant avers that it was an error of law or abuse of discretion for the court to preclude defendant from having access to information regarding plaintiff and their daughter, including their whereabouts, without more than a mere assertion by plaintiff that there was prior domestic abuse. See defendant’s statement of errors at ¶ 3. Defendant avers that this violated the requirements for an interstate uniform support petition as set forth in 23 Pa.C.S.A. §7311.
Section 23 Pa.C.S.A. § 7311 provides as follows:
A petitioner seeking to establish or modify a support order or to determine parentage in a proceeding under this part must verify the petition. Unless otherwise ordered under section 7312 (relating to nondisclosure of information in exceptional circumstances), the petition or accompanying documents must provide, so far as known, the name, residential address and social security number of the obligor and the obligee and the name, sex, residential address, social security number and date of birth of each child for whom support is sought. The petition must be accompanied by a certified copy of any support order in effect. The *191 petition may include any other information that may assist in locating or identifying the respondent.
Further, 23 Pa.C.S.A. § 7312 provides as follows:
[u]pon a finding, which may be made ex parte, that the health, safety or liberty of a party or child would be unreasonably put at risk by the disclosure of identifying information or if an existing order so provides, a tribunal shall order that the address of the child or party or other identifying information not be disclosed in a pleading or other document filed in a proceeding under this part.
23 Pa.C.S.A. §7312.
As set forth in detail above, the domestic relations file contains the April 21, 2014 correspondence from Safe Haven and the Texas Department of Family and Protective Services report detailing the physical, emotional, verbal and sexual abuse that had been suffered by plaintiff. At the time of the hearing, plaintiff testified to one specific instance of abuse in which defendant pinned plaintiff to the ground, sat on her chest, put his knees on her hands, and attempted to strangle plaintiff. See N.T. at 27:23-28:9. The record, including the Safe Haven letter, the Texas report confirmation, and plaintiff’s testimony, all reflect that this incident occurred while the parties’ daughter was present and that she observed it happen. The record also reflects that the parties’ daughter summoned a relative who was living with them at the time, and that only when said relative intervened did the defendant’s assault on plaintiff cease. See id. at 6-9. In addition to the assault described by plaintiff, she also testified that she received threatening telephone calls while in Pakistan and that she believed her life and her daughter’s life were in danger. See id. at 20:5-8; 21:8-12; and 21:17-22.
*192 Under these circumstances, it was not an error of law or an abuse of discretion for the Texas Attorney General’s Office, the Northampton County Domestic Relations Section, or the court to determine that the health, safety or liberty of plaintiff or the parties’ daughter would be unreasonably put at risk by the disclosure of the identifying information at issue pursuant to 23 Pa.C.S.A. § 7312. While defendant asserts that “[s]uch an error and abuse of discretion precluded father from properly inquiring as to the circumstances, documentation, and factual allegations in this matter, which were pertinent to the petition for support,” we disagree, and believe, that the plaintiff’s address and telephone number are in no way relevant to the determination of whether defendant is required to pay support for his daughter or the amount of such support.
It was not an error of law or abuse of discretion to preclude defendant from having access to plaintiff and the child, including their whereabouts, because access to such information would potentially place plaintiff in danger.
C. It was not an error of law or abuse of discretion to permit the support complaint in Texas to be heard through the interstate support system.
In his fourth alleged error, defendant avers that, because of plaintiff’s immigration status in the United States, the court erred or abused its discretion when it permitted the support complaint to be heard through the interstate support system. Contrary to this assertion, it was not an error of law or abuse of discretion to allow this matter to be heard through the interstate support system.
1. Plaintiff’s Right to File to Child Support
There is no statute or law that would preclude plaintiff *193 from filing for child support because she is not a United States citizen. In fact, case law specifically allows plaintiff to file her claim for child support. It is not disputed by the parties that the parties’ daughter is a United States citizen. It is well established that the right to support is a right of the child, not the mother or father. See Kesler v. Weniger, 744 A.2d 794, 796 (Pa. Super. 2000) (emphasis added). The right to support is a property right of the child arising from the parent-child relationship. See Michael v. Michael, 520 A.2d 473, 475 (Pa. Super. 1987) (emphasis added). The support sought in the instant matter is not a right of plaintiff, but rather is a right of the child.
Title 42 U.S.C. § 1981 makes it abundantly clear that:
[a] 11 persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property....
42 U.S.C. § 1981(a). Plaintiff is clearly a “person” and is within the jurisdiction of the United States. Plaintiff therefore has the right in Pennsylvania to sue defendant. Further, Pa.R.C.P. No. 1910.3 provides, in relevant part, that an action for child support may be brought:
(1) by a person, including a minor parent or a minor spouse, to whom a duty of support is owing, or;
(2) on behalf of a minor child by a person having custody of the child, without appointment as guardian ad litem, or;
(3) on behalf of a minor child by a person caring for *194 the child regardless of whether a court order has been issued granting that person custody of the child, or;
(4) by a public body or private agency having an interest in the case, maintenance or assistance of a person to whom a duty of support is owing.
Pa.R.C.P. No. 1910.3(a). Plaintiff clearly qualifies as eligible to file for support of her daughter under any of the above sections and was, in fact, receiving the assistance of the Title IV-D attorney to do so.
2. Plaintiff’s Interstate Support Order
Title 23 Pa.C.S.A. § 8301 provides for the establishment of an order for child support or registration of an order for child support of another county for enforcement or modification ofa support order. See 23 Pa.C.S.A. § 8301(a). Subsection (b) provides that “[a]n individual petitioner or a support enforcement agency must commence a proceeding authorized under this part by filing a petition or complaint in an initiating tribunal for forwarding to a responding tribunal or by filing a petition or complaint directly in a tribunal of another county which has or can obtain personal jurisdiction over the respondent.” 23 Pa.C.S.A. § 8301(b). Further, § 8303 provides that “[ujpon the filing of a petition or complaint authorized by this part, an initiating tribunal shall forward one copy of the petition or complaint and its accompanying documents to the responding tribunal.” 23 Pa.C.S.A. § 8303. Additionally, § 8304 then provides the duties and powers of the responding tribunal, stating as follows:
a) Filing and notice. — If a responding tribunal receives a petition, a complaint or comparable pleading from an initiating tribunal or directly pursuant to section *195 8301 (b)(relating to proceedings under this part), it shall file the pleading and notify the petitioner by first class mail where and when it was filed.
(b) Action. — A responding tribunal, to the extent otherwise authorized by law, may do any of the following:
(1) Exercise continuing, exclusive jurisdiction to issue or enforce a support order, modify a support order or render a judgment to determine parentage.
(2) Order an obligor to comply with a support order, specifying the amount and the manner of compliance.
(3) Order income withholding.
(4) Determine the amount of any arrearages and specify a method of payment.
(5) Enforce orders by civil or criminal contempt, or both.
(6) Set aside property for satisfaction of the support order.
(7) Place liens and order execution on the obligor’s property.
(8) Order an obligor to keep the tribunal informed of the obligor’s current residential address, telephone number, employer, address of employment and telephone number at place of employment.
(9) Issue a bench warrant for an obligor who has failed after proper notice to appear at a hearing ordered by the tribunal and enter the bench warrant in any state and local computer systems for criminal warrants.
*196 (10) Order the obligor to seek appropriate employment by specified methods.
(11) Award reasonable attorney fees and other fees and costs.
(12) Issue a temporary child support order pending judicial resolution of a dispute regarding paternity if any of the following apply:
(i) The obligor has signed an acknowledgment of paternity.
(ii) The obligor has been determined under state law to be the parent.
(iii) There is clear and convincing evidence that the obligor is the child’s parent.
(13) Grant any other available remedy.
23 Pa.C.S.A. § 8304.
Plaintiff filed the required paperwork in Texas. Pursuant to relevant statutes, the Texas Court, as the initiating tribunal, forwarded the support complaint and paperwork to Northampton County. The Northampton County Domestic Relations Section sent notice to the plaintiff and then began the process of establishing the support order. Defendant had a support conference which resulted in judge Roscioli’s support order being entered. After the de novo hearing, which was requested by defendant, the December 22, 2014 support order was entered by the undersigned. Plaintiff, as well as both states involved, have fully complied with the Interstate Family Support Act. Mother is not precluded from pursuing child support for the parties’ daughter, as it is in fact the parties’ daughter *197 that is entitled to receive the monetary support from her father, the defendant. Defendant’s alleged error number 4 is without merit and the appeal should be denied.
D. It was not an error of law or abuse of discretion to overrule Defendant’s Preliminary Objections.
Defendant’s seventh and final alleged error is that the court committed an error of law or abused its discretion by overruling defendant’s preliminary objections to the support petition. Defendant argues that it was an error to overrule the preliminary objections when plaintiff did not file an answer to the preliminary objections. Defendant also alleges that the court ignored §159.210 of the Texas Code. These allegations are without merit.
1. The preliminary objections are not properly before the court
As an initial matter, the preliminary objections are not properly before the court. As set forth above, on July 21, 2014, counsel for defendant filed the preliminary objections to plaintiff’s uniform support petition. The order overruling the preliminary objections was filed on September 12, 2014. Defendant did not file a motion for reconsideration or an appeal of the September 12, 2014 order. Pa.R.C.P. No. 1930.2 governs post trial practice in domestic relations matters as well as motions for reconsideration. Rule 1930.2(b) states as follows:
[a] party aggrieved by the decision of the court may file a motion for reconsideration in accordance with Rule of Appellate Procedure 1701(b)(3). If the court does not grant the motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never *198 been filed.
The note to that subsection refers to Pa.R.A.P. No. 903, which provides that “[e]xcept as otherwise prescribed by this rale, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.” The time in which to appeal the order overruling the preliminary objections has expired.
Defendant took no action related to the order overruling his preliminary objections within the required time frame. Defendant has therefore waived any argument regarding those preliminary objections and any issue related to the preliminary objections should be deemed moot.
2. Plaintiff’s Failure to File an Answer
Addressing the two issues raised in alleged error number 7, on their merits, they are each without merit. Initially, as noted, defendant alleges the court erred in overruling the preliminary objections when plaintiff did not file an answer to the preliminary objections. After the preliminary objections were filed, on August 12,2014, the parties were ordered to appear for a hearing on August 25, 2014. The hearing was held on August 25, 2014, and at the conclusion of the hearing counsel for defendant was ordered to file a brief within ten days, with service upon the court and the Title IV-D advocate. The Title IV-D Advocate, attorney Stephen Mowrey, was granted fifteen days from the date of the hearing to provide his brief to the court and counsel for defendant. The briefs were timely submitted and were reviewed by the court prior to the September 12, 2014 order overruling the preliminary objections.
*199 The record clearly reflects that plaintiff’s counsel did not file a paragraph by paragraph written response to the preliminary objections. This is not, however, determinative of this matter. Once the preliminary objections were filed, the court ordered that a hearing be held. At that hearing, plaintiff was granted the opportunity to respond in the form of a written brief. Both plaintiff and defendant submitted briefs. The court thoroughly reviewed the briefs and performed a legal analysis of the issues. While no “answer” was filed, plaintiff clearly opposed the preliminary objections, a hearing was held and briefs were submitted. It was not an error of law or abuse of discretion to overrule the preliminary objections merely because a paragraph by paragraph answer was not filed by the Title VI-D attorney on behalf of plaintiff.
2. Application of Texas Statute §159.210
Defendant next alleges that the court ignored section 159.210 of the Texas Code. See Tex. FA Code ann. § 159.210. That statute is entitled “Applicability to Nonresident Subject to Personal Jurisdiction” and states as follows:
(a) Except as provided by Subsection (b), Subchapters D-H do not apply to a tribunal of this state exercising personal jurisdiction over a nonresident in a proceeding under this chapter or under other law of this state relating to a support order or recognizing a support order of a foreign country or political subdivision on the basis of comity. The tribunal shall apply the procedural and substantive law of this state in a proceeding described by this subsection.
(b) Notwithstanding Subsection (a), a tribunal of this state exercising personal jurisdiction over a nonresident *200 in a proceeding under this chapter or under other law of this state relating to a support order or recognizing a support order of a foreign country or political subdivision on the basis of comity may:
(1) receive evidence from another state as provided by Section 159.316;
(2) communicate with a tribunal of another state as provided by Section 159.317; and
(3) obtain discovery through a tribunal of another state as provided by Section 159.318.
Tex. FA Code ann. § 159.210. Contrary to the assertions of defendant, this statute is not applicable. The Texas courts did not, in fact, exercise personal jurisdiction over defendant in the instant matter.[2] As discussed above, 23 Pa.C.S.A. § 8301(b) provides that “[a]n individual petitioner or a support enforcement agency must commence a proceeding authorized under this part by filing a petition or complaint in an initiating tribunal for forwarding to a responding tribunal or by filing a petition or complaint directly in a tribunal of another county which has or can obtain personal jurisdiction over the respondent.” 23 Pa.C.S.A. § 8301(b). Section 8303 provides that “[ujpon the filing of a petition or complaint authorized by this part, an initiating tribunal shall forward one copy of the petition or complaint and its accompanying documents to the responding tribunal.” 23 Pa.C.S.A. § 8303. 23 Pa.C.S.A. § 8304 then provides the duties and powers of the responding tribunal, stating as follows:
*201 (a) Filing and notice. — If a responding tribunal receives a petition, a complaint or comparable pleading from an initiating tribunal or directly pursuant to section 8301(b)(relating to proceedings under this part), it shall file the pleading and notify the petitioner by first class mail where and when it was filed.
(b) Action. — A responding tribunal, to the extent otherwise authorized by law, may do any of the following:
(1) Exercise continuing, exclusive jurisdiction to issue or enforce a support order, modify a support order or render a judgment to determine parentage.
(2) Order an obligor to comply with a support order, specifying the amount and the manner of compliance.
(3) Order income withholding.
(4) Determine the amount of any arrearages and specify a method of payment.
(5) Enforce orders by civil or criminal contempt, or both.
(6) Set aside property for satisfaction of the support order.
(7) Place liens and order execution on the obligor’s property.
(8) Order an obligor to keep the tribunal informed of the obligor’s current residential address, telephone number, employer, address of employment and telephone number at place of employment.
(9) Issue a bench warrant for an obligor who has failed *202 after proper notice to appear at a hearing ordered by the tribunal and enter the bench warrant in any state and local computer systems for criminal warrants.
(10) Order the obligor to seek appropriate employment by specified methods.
(11) Award reasonable attorney fees and other fees and costs.
(12) Issue a temporary child support order pending judicial resolution of a dispute regarding paternity if any of the following apply:
(i) The obligor has signed an acknowledgment of paternity.
(ii) The obligor has been determined under state law to be the parent.
(iii) There is clear and convincing evidence that the obligor is the child’s parent.
(13) Grant any other available remedy.
23 Pa.C.S.A. § 8304.
Plaintiff filed the required paperwork in Texas. As the initiating tribunal, the Texas agency then forwarded the complaint and paperwork to Northampton County, where defendant resides. The Northampton County domestic relations section sent notice to the plaintiff and then began the process of establishing the support order. At no time did Texas exercise jurisdiction in this matter. Once the initiating tribunal forwarded the paperwork to Northampton County, it was Northampton County that exercised jurisdiction to establish the support order in this matter. Defendant attended the court-ordered support *203 conference which resulted in judge Roscioli’s order. Defendant had the right to file for a de novo hearing, which he did. After the de novo hearing, the current support order was put in place. Defendant was not deprived of any right in this process, and the court fully complied with the processes and procedures established by the Interstate Uniform Support Act. Defendant has not contested the jurisdiction exercised by Northampton County and has fully engaged in the legal process in Northampton County.
Defendant’s alleged error number seven is without merit.
CONCLUSION
Each of the issues raised by defendant in his appeal is without merit. The court carefully considered plaintiff’s legal status in the United States, as well as the circumstances which led to her coming to the country. It was not an error of law or abuse of discretion to conclude that defendant had a $0.00 net monthly income and it was further not an error or abuse of discretion to decide that she should not be assessed an earning capacity at this time. We properly determined that, under the circumstances, defendant was not entitled to have access to certain information regarding plaintiff, including her address. It was also not an error of law or abuse of discretion to allow the complaint to be heard through the interstate support system, as the court complied with each of the necessary processes and procedures. Finally, while the preliminary objections of defendant to the complaint are not properly before the Superior Court, even considering those arguments on the merits, the preliminary objections were properly overruled. Therefore, it is respectfully submitted that defendant’s appeal is without merit and should be dismissed.

. Judge Roscioli is the administrative judge for the Northampton County Court of Common Pleas, Domestic Relations Section.

. We believe, however, that the Texas Courts could have exercised personal jurisdiction over defendant in a support matter should they have chosen to do so. As set forth above, defendant had submitted to jurisdiction in Texas for a custody matter involving the parties’ daughter, for whom support was being sought. See N.T. at 26:18-20; 32:2-4.