549 A.2d 1316

**Barbara A. HALEY**

v.

**Charles F. HALEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 14, 1988.

Filed Nov. 1, 1988.

324

Charles F. Haley, in propria persona.
Barbara Haley Wize, in propria persona.

Before CAVANAUGH, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

This is a pro se appeal by the defendant/father, who is an attorney, from a June 17, 1987 Order modifying a previous

child support Order. Appellee/mother is also proceeding pro se in this matter but has not submitted a brief.

The parties were married in Texas in 1968. On January 28, 1986, appellee filed a complaint in divorce seeking, among other items, spousal and child support. The parties had three children during the course of their marriage: Deron, born September 1, 1971; Ryan, born March 17, 1973; and Shannon, born August 1, 1977. On February 10, 1987, a final Decree in divorce was entered. At the time of the hearing on appellants' petition for modification of support, an existing child support Order was in effect requiring a total monthly support obligation by appellant in the amount of $645 per month less a $76 per month payment to be made by appellant on a joint obligation of the parties, resulting in an actual support payment of $569 per month. Appellant filed the petition for modification because he had been laid off on February 16, 1987 from a $35,000 a year job as labor counsel for Heck's Inc. The hearing officer recommended the support obligation remain unaltered at $569 per month plus the $76 payment on the joint obligation, but did alter the form of payment by requiring appellant to pay only $250 per month while unemployed, with the remainder accumulating as an arrearage. The trial court entered the recommendations as an Order on June 17, 1987. After a hearing de novo the trial court denied both parties' exceptions and made the Order final on October 19, 1987. This timely appeal followed.[1]

Appellant's sole claim on appeal is that the trial court abused its discretion in refusing to reduce his child support obligation after he incurred an involuntary reduction in income.

1. According to appellant's brief and the record, he became employed with the State of West Virginia as a hearing examiner for the West Virginia Education Employees Grievance Board on September 1, 1987 at the rate of $30,000 per year. Since that time appellant accepted a position in a law firm in Charleston, West Virginia. After a hearing, a new support Order dated January 4, 1988 was entered which required appellant pay $426 per month, plus $76 per month on the joint obligation and arrearages—this is a guideline figure based on the parties' monthly income.

Our scope of review in child support cases is limited. In *Ritter v. Ritter*, 359 Pa.Super. 12, 16–18, 518 A.2d 319, 322 (1986), we set forth the standard of review for child support as follows:

It is within the trial court's discretion to determine the amount of a support Order, and its judgment should not be disturbed on appeal absent a clear abuse of that discretion. *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984); *Commonwealth ex rel. Loring v. Loring*, 339 Pa.Super. 92, 488 A.2d 324 (1985). 'On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award.' *Fee v. Fee*, 344 Pa.Super. 276, 279, 496 A.2d 793, 794 (1985); *Commonwealth ex rel. Robinson v. Robinson*, 318 Pa. Super. 424, 465 A.2d 27 (1983). A finding of abuse will be made only upon a showing of clear and convincing evidence. *Koller v. Koller*, 333 Pa.Super. 54, 481 A.2d 1218 (1984).

The role of an appellate court in support proceedings is limited and a finding of an abuse of discretion is not made lightly. *Hartley v. Hartley*, 364 Pa.Super. 430, 528 A.2d 233 (1987); *Shindel v. Leedom*, 350 Pa.Super. 274, 504 A.2d 353 (1986). With this standard in mind, we will review appellant's claim.

Appellant contends the trial court failed to apply the support guidelines properly by not utilizing his actual income and that the court's decision is unsupported by the evidence and is an abuse of discretion. Appellant argues that in reviewing his motion for modification the trial court erred by not considering his involuntary reduction in income as a reduction in earning capacity. He contends it was an abuse of discretion to ignore his reduction in actual income and to conclude his earning capacity remained undiminished.

In *DeMasi v. DeMasi*, 366 Pa.Super. 19, 31–33, 530 A.2d 871, 877 (1987), *allocatur denied*, 517 Pa. 631, 539 A.2d 811

(1987), we summarized the basis for determining a parent's support obligation as follows:

> Both parents are equally responsible for supporting their children, and the extent of their respective support obligations is determined by their capacity and ability. *Fee v. Fee,* 344 Pa.Super. 276, 496 A.2d 793 (1985). A parent's ability to pay support is determined primarily by financial resources and earning capacity. *Hesidenz v. Carbin,* 354 Pa.Super. 610, 512 A.2d 707 (1986); *Commonwealth ex rel. Cochran v. Cochran,* 339 Pa.Super. 602, 489 A.2d 804 (1985). The obligation of support, then, is measured more by earning capacity than by actual earnings. *Hesidenz, supra.*

*See DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987).

■ In fashioning the award to appellee for support of the parties' children, the hearing officer and the trial court accounted for appellant's reduction in actual income by reducing the actual support payment from $569 per month to $250 per month [2] and allowing the difference to accumulate as arrearages, until such time as appellant obtained employment and could pay on the arrearages. Both the hearing officer and the trial court concluded appellant had an undiminished earning capacity despite his being laid off from Heck's Inc. Upon thorough review of the record, we find clear and convincing evidence of record that such a finding is an abuse of the trial court's discretion. Further, we find the reduced-payment-coupled-with-accumulated-arrearages arrangement ordered below, does not adequately address appellant's changed ability to pay support as determined by his financial resources at the time of his unemployment.

Appellant incurred a definite and substantial involuntary reduction of income when he was laid off from Heck's Inc. This decrease in earnings was from a net total of $2,196 per month to unemployment compensation of $975 per month

**2.** We recognize appellant had a continuing obligation under both Orders to pay $76 a month on the parties' joint obligation.

before taxes.  Appellee's net income at that time was $1,220 per month with reported expenses of approximately $1,870 per month.[3]  Although earning capacity is more determinative of an ability to pay than actual earnings, *DeMasi, supra,* and *Hesidenz, supra,* the two concepts are closely linked and under these circumstances are indistinguishable.  Here, we find no basis exists for the trial court's finding that appellant's earning capacity was not curtailed at the same time his actual earnings were reduced.  Although appellant is an attorney, he was not in practice for himself and had no reported income from his ability to practice law at the time of the lay off.  Further, appellant had no other reported earnings besides his salary or unemployment compensation.  Under these circumstances, the trial court erred in concluding appellant's earning capacity was undiminished.  Accordingly, we vacate the Order of October 19, 1987 which reaffirmed the Order of June 17, 1987.

■ A parent's involuntary loss of income is a serious matter with obvious adverse repercussions on the economic welfare of the children, however, it is a loss which must be weathered.  If the parties had still been together when appellant was laid off, the family would have had to make do with what it had, all sharing to a commensurate degree in the loss, rather than the father bearing all.  The same should follow when the parents are separated, as here.  Here, the record is clear that appellant was unemployed and actively seeking a job, without any type of earnings or capacity to earn other than his unemployment compensation during that period.  This may not be likened to the cases wherein an obligor has voluntarily withdrawn from income producing endeavors or reduced his earnings out of malice or concealed earnings by hiding behind family corporate shields, unsubstantiated debts or unwarranted expenses.  In those cases we have consistently gone behind the subterfuge and applied the earning capacity consideration.  Proof of the inadequacy of the application of that concept in this case was the fact that when appellant was finally re-em-

3.  Appellant failed to report his expenses.

ployed, it was at a lower salary and the court recognized this permanent diminution of earning capacity by reducing the permanent Order to $426 per month. With the economy under constant adjustment, jobs being eliminated and "take backs" resulting in reduced earnings, the courts must be careful not to find earning capacity when none exists. Because of recent legislation compelled by federal requirements to collect arrearages and enforce payment, assessment of arrears must truly reflect the actual situation as there is virtually no possibility of adjustment in the future, if the decision was not appropriate. Act No. 1988-35, approved March 25, 1988, creates a "Judgment by Operation of Law" as follows (23 Pa.C.S.A. § 4302 Definitions):

'Judgment by operation of law.' A judgment which exists without the need for any ministerial act and which arises out of the existence of facts readily verifiable from the domestic relations section's records. The existence of a valid support order and nonpayment of the order, together, create the judgment.

The Amendments to 23 Pa.C.S.A. § 4352, Continuing jurisdiction over support orders, provide in pertinent parts:

.    .    .    .    .

(c) **Arrears as judgments.**—On and after the date it is due, each and every support obligation shall constitute a judgment against the obligor by operation of law, with the full force, effect and attributes of a judgment of court, including the ability to be enforced, and shall be entitled as a judgment to full faith and credit in this or any other state. Past due support obligations shall not become a lien upon the real and personal property of the person ordered to make such payments until the judgment or order has been entered of record in the office of the clerk of the court of common pleas in the county where the real or personal property owned by the person obligated to pay support is located or in the office of the clerk of the branch of the court of common pleas embracing such county in accordance with 42 Pa.C.S. § 4303 (relating to effect of judgments and orders as liens).

Execution shall issue thereon pursuant to the Rules of Civil Procedure. The obligation for payment or arrears or past due support shall terminate by operation of law when all arrears or past due support has been paid.

**(d) Retroactive modification of arrears.**—No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. If a petition for modification was filed, modification may be applied to the period beginning on the date that notice of such petition was given, either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor.

Finally, 23 Pa.C.S.A. § 4354, **Willful failure to pay support order,** was added, creating a summary offense as follows:

### § 4354. Willful failure to pay support order

**(a) Offense defined.**—An individual who willfully fails to comply with a support order of a court of this Commonwealth when the individual has the financial ability to comply with the support order commits a summary offense.

**(b) Application.**—This section applies to all support cases, whether civil or criminal and whether the defendant is married, unmarried, separated or divorced.

**(c) Jurisdiction.**—Exclusive original jurisdiction of a proceeding under this section is vested in the courts of common pleas of this Commonwealth.

Because of these more stringent laws as to arrearages and their nonmodifiability, the automatic imposition of judgment without review, and the imposition of a penal sanction (summary offense) for willful failure to support, the trial courts must now apply closer scrutiny to ability to pay than heretofore. Earning capacity becomes too vague a basis for assessing arrears, absent some verifiable basis for determining that the capacity exists, or that it was eliminated or reduced because of intentional actions by the obligor.

■ Our review of the record disclosed that appellee testified she had been forced to "borrow money" from her mother and other relatives during appellant's period of unemployment in order to provide for the welfare of the parties' children (N.T. 10/13/87, pp. 29–30). Any such loans, if reasonable and undertaken for the benefit of the children, should be a debt shared by both parties. Therefore, on remand we direct the trial court to hold a hearing to determine the total amount of money borrowed for the benefit of the children. Appellant should be held responsible for an equitable portion of the amount as arrearages. While arrears may be appropriately retained in the face of reduced income, if it calls for additional sacrifice on the part of the obligor it must be balanced with concomitant sacrifice on the part of the payee. Here a disproportionate sacrifice was imposed upon the father.

Order vacated and remanded for further proceedings consistent with this Opinion.

Jurisdiction relinquished.