J-S59001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUZANNE M. GILES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIC H. GILES | : | No. 1630 EDA 2019 |

Appeal from the Order Entered May 13, 2019
In the Court of Common Pleas of Northampton County Domestic
Relations at No(s):  DR-0062818,
PACSES #331117121

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 30, 2019**

Suzanne M. Giles ("Mother") appeals the order of the Court of Common Pleas of Northampton County, which made final the August 17, 2018 order, directing Dominic H. Giles ("Father") to pay $3,042.00 per month, which included $2,293.00 for child support, $473.00 for alimony *pendente lite*, and $276.00 for arrears.[1]  Upon careful review, we affirm.

_____

[1] There is no divorce decree, and not all economic claims have been resolved; therefore, the portion of the order regarding alimony *pendente lite* is not appealable.  **See Leister v. Leister**, 684 A.2d 192 (Pa. Super. 1996) (difference between spousal support and alimony *pendente lite* claims is negligible; neither is appealable until all economic issues resolved); **see also Fried v. Fried**, 501 A.2d 211 (Pa. 1985) (issues reviewable after entry of divorce decree and resolution of all economic issues).  This Court filed an order requesting Mother to show cause as to whether the alimony *pendente lite* portion of the order is appealable.  **See** Order, 6/25/19.  Mother filed a response conceding the alimony *pendente lite* portion is not appealable, and

For a recitation of the complete factual background and procedural history of the case, we refer to the Honorable Jennifer R. Sletvold's comprehensive opinion of July 24, 2019. *See* Trial Court Opinion, 7/24/19 at 1–10.

Mother raises the following issues on appeal:

1. Did the [t]rial [c]ourt commit an error of law and/or abuse its discretion in calculating [Father's] disposable business income though Hire a Husband, Inc. based upon federally taxed income for [f]ederal tax year 2017 rather than actual cash flow.

2. Did the [t]rial [c]ourt commit an error of law and/or abuse its discretion in calculating [Father's] personal disposable income based upon federally taxed income for [f]ederal tax year 2017 rather than actual cash flow.

Appellant's Brief, at 4.

In reviewing an appeal regarding child support, the Superior Court's scope of review is limited. ***Kotzbauer v. Kotzbauer***, 937 A.2d 487, 489 (Pa. Super. 2007). We adhere to the following standard:

[T]he amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. *A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground.*

---

proceeds in this appeal with that portion of the order pertaining to child support. ***See*** Appellant's Response to Court's Rule to Show Cause, 7/2/2019, at 2-3.

***Griffin v. Griffin***, 558 A.2d 75, 77-78 (Pa. Super. 1989) (en banc) (citations omitted) (emphasis added).

Mother's claims are essentially one and the same: the trial court abused its discretion in calculating support obligations based on Father's personal and corporate tax returns. We focus our analysis on the trial court's determination that the tax returns accurately reflect Father's income and cash flow. Trial Court Opinion, 7/24/19, at 12.

In determining financial responsibilities in child support cases, the court must look to the actual disposable income of the parties by considering "all forms of income." ***See Cunningham v. Cunningham***, 548 A.2d 611, 612–13 (Pa. Super. 1988); ***see also MacKinley v. Messerschmidt***, 814 A.2d 680, 681 (Pa. Super. 2002). "Monthly Gross Income" includes, in relevant part: (1) wages, salaries, bonuses, fees, and commissions; (2) net income from business or dealings in property; and (3) interest, rents, royalties, and dividends. Pa.R.C.P. 1910.16-2. The word "net" in the rule implies that there are acceptable business deductions. ***See Berry v. Berry***, 898 A.2d 1100, 1107 (Pa. Super. 2006). For example,

> Depreciation and depletion expenses should be deducted from gross income only *where they reflect an actual reduction in the personal income of the party claiming the deductions*, such as where, e.g., he or she actually expends funds to replace worn equipment or purchase new reserves.

***Cunningham***, 548 A.2d at 613 (emphasis added).

We have carefully reviewed the record and the briefs filed in this matter. Mother failed to provide clear and convincing evidence of an abuse of discretion in calculating Father's income for child support purposes. **See Griffin**, **supra** at 77. Here, the court appropriately used Father's corporate and personal tax returns in determining Father's disposable income. Each deduction reflects an actual reduction in his personal income. **See Cunningham**, **supra** at 613. Accordingly, we agree with the trial court's determination, and we conclude the trial court did not commit an error of law or abuse its discretion in calculating Father's support obligation.

We affirm based on Judge Sletvold's comprehensive opinion. **See** Trial Court Opinion, 7/24/19, at 10–22. We direct the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/19

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
## COMMONWEALTH OF PENNSYLVANIA
### DOMESTIC RELATIONS SECTION

| | | |
|---|---|---|
| SUZANNE M. GILES, | ) | No: DR-0062818 |
| Plaintiff | ) | PASCES No.: 331117121 |
| v. | ) | Sup. Ct. No.: 1630 EDA 2019 |
| | ) | |
| DOMINIC GILES, | ) | |
| Defendant | ) | |

## PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a) STATEMENT

**AND NOW**, this 24th day of July, 2019, the Court issues the following statement pursuant to Pa.R.A.P. No. 1925(a):

## Procedural History

This matter is before the Superior Court on Plaintiff's appeal of our Order of Court dated May 3, 2019.

On May 29, 2018, Plaintiff filed with the Northampton County Court of Common Pleas an Amended Complaint in Divorce which contained counts sounding in divorce, equitable distribution, alimony and alimony pendente lite, counsel fees and expenses, and custody of the parties' 6 children.[1] On that date, Plaintiff certified her Complaint for alimony and alimony pendente lite ("APL") to the Northampton County Domestic Relations Section (hereinafter "DRS"). See Amended Complaint, *Giles v. Giles*, DR-0062818 (C.P. Northampton 5/29/2018).

---

[1] Plaintiff's divorce action was filed at Northampton County Docket No. C-48-CV-2016-03545 and was initially commenced in 2016. As set forth herein, Plaintiff filed this Amended Complaint on May 29, 2018.

7/24/19 Original to Docketing
XC: The Honorable Jennifer R. Sletvold
Lisa Yany Veisziemlein (DRS Director)
Jessica F. Moyer, ESQ
April L. Cordts, ESQ
Office Supervisor                    Mailed: 7/25/19

On June 21, 2018, the parties were ordered to appear at a support conference on July 26, 2018. On July 2, 2018, Plaintiff filed an Amended Complaint with DRS seeking child support for the parties' six (6) minor children and spousal support. See Amended Complaint for Support, *Giles, supra.* (C.P. Northampton 7/2/2018).

On July 26, 2018, the parties and counsel appeared at DRS for the scheduled support conference. See Summary of Trier of Fact, *Giles, supra.* (C.P. Northampton 7/26/2018). Plaintiff indicated that she wished to proceed with the APL claim and withdraw the spousal support claim. *Id.* at p. 1. Plaintiff reported being self-employed since January 2017 as a veterinarian, performing in home euthanasia on pets on an as-needed basis. *Id.* Prior to that time, she had been a stay at home mother since 2004. *Id.* Plaintiff did not have her 2017 federal income tax return available at the time of the conference but submitted her Schedule C and her local tax return. *Id.* Plaintiff also submitted a typed income statement from Walbert Animal Hospital, where she worked on an as-needed basis. *Id.* Plaintiff indicated that she home schools each of the parties' 6 school-age children.[2] *Id.* Plaintiff reported expenses for piano lessons for 2 of the children of $37.00 per week per child. *Id.* at p. 2.

Defendant reported that he is self-employed and has been so

---

[2] The parties have 7 children, one of which has attained the age of majority.

employed for 17 years. *Id.* Defendant submitted his 2017 federal personal and corporate tax returns. *Id.* Defendant reported that he owns/operates a handyman company named "Hire-A-Husband", works as a real estate agent, and also bartends at Blue Mountain during the winter months. *Id.* Defendant reported that he pays himself a salary through his business, and he also receives wages from Blue Mountain. *Id.* Defendant's reported wages on the 2017 Federal Tax Return totaled $42,614.00 of which $6,947.00 was from Blue Mountain. *Id.* at 3. Defendant reported that primarily from December to April, when business is slow for his handyman business, he bartends approximately 2 days per week, 12 hours per day, making $8.00 per hour at Blue Mountain. *Id.* Defendant's Schedule C for his real estate business reflected gross receipt sales of $19,782.00. *Id.* Defendant reported having three (3) employees at Hire-A-Husband, who are paid in cash and are not issued 1099 or W-2 forms. *Id.* at 4. Defendant's 2017 1120-S corporate tax return listed a deduction for day laborers totaling $55,000.00. *Id.* The gross receipts for Hire-A-Husband totaled $243,452.00 for 2017. *Id.* The cost of goods reflected on the return was $101,726.00. *Id.* Counsel for Defendant indicated that he provided all accurate information to an accountant, and the accountant completed the return. *Id.* at 5. Defendant reported having 3 bank accounts at BB&T for himself and the business, along with a joint

36

account with Plaintiff. *Id.*

The parties reported having rental properties, specifically 5 properties; however, only 3 of the rental properties were reported on Defendant's 2017 tax returns. *Id.* Counsel for Plaintiff requested that the depreciation listed on the tax returns for the rental properties be added back when Defendant's tax return is calculated. *Id.* at 6. While several of the properties were owned by both parties, Defendant received all income/rents from the properties. *Id.*

Defendant reported paying a variety of expenses for Plaintiff, including a family cell phone plan in the amount of $350.00, the PP&L electric bill of $300.00 per month for the home in which Plaintiff and the children reside, Plaintiff's car payment of $600.00 per month, insurance for Plaintiff's vehicle and their oldest son's vehicle, taxes of $350.00 per month, and home owner's insurance of $110.00 per month for the home in which Plaintiff and the children reside. *Id.* at 6.

Defendant was ordered to provide verification of the various expenses discussed at the conference by August 6, 2018, and Plaintiff was directed to submit her 2017 tax returns and supporting documents, along with her paystubs from Walbert Animal Hospital by August 6, 2018. *Id.* at 7. Disposition on the Complaint for Support was deferred pending receipt of the requested information. *Id.*

Plaintiff submitted her 2017 Federal tax return and the required

pay stubs by August 6, 2018.   See Summary of Trier of Fact (2nd set), *Giles, supra.* (C.P. Northampton 8/17/2018).  Defendant did not submit any documentation of the taxes he alleged he paid for the marital residence. *Id.*

The conference officer noted that, while the parties reported discrepancies with each of their tax returns at the time of the conference, because the tax returns had been submitted to the IRS, they would be utilized for the support calculations. *Id.*  Plaintiff's return was submitted to the DRS staff accountant for review, and it was determined that Plaintiff had an adjusted monthly net income of $2,115.00. *Id.*  Defendant's tax return was submitted to the DRS staff accountant for review, with the conference officer requesting that the return be reviewed in "multiple ways". *Id.* at 2.  The DRS staff accountant determined that Defendant's rental income and wages resulted in an adjusted net monthly income of $4,388.00. *Id.*  Per the staff accountant's review of Defendant's business income from Hire-A-Husband, Defendant had an adjusted net monthly income of $2,583.00.  Per review of the rental income only, Defendant had an adjusted net monthly income of $1,758.00. *Id.*  On review of Defendant's business income only and the rental income, the DRS accountant determined that Defendant had an adjusted monthly net income of $5,204.00. *Id.*  The conference officer noted that "[i]t is

38

unknown to this office what the defendant's actual wages would be had he paid himself a salary that reflected his actual earnings"; however, the conference officer recommended that Defendant's income be based on the DRS accountant's findings of Defendant's wages and rental income totaling $4,388.00 per month plus the business income of $2,573.00 per month. *Id.* This resulted in an adjusted monthly net income for Defendant of $6,961.00. *Id.* at 2. Because Defendant failed to provide verification of any of the expenses or additional payments he claimed to have made to or on behalf of Plaintiff, no consideration was given to those items. *Id.* at 3.

On August 17, 2018, the Honorable Paula A. Roscioli entered an Order of Court setting Defendant's support obligation at $3,042.00 per month, allocated $2,766.00 for current support and $276.00 for arrears. See Order of Court, *Giles*, *supra*. (C.P. Northampton 8/17/2018). The Order was entered for the support of Plaintiff (spousal support) and the parties' 6 minor children. *Id.* Arrears were set at $7,285.90 as of the date of the Order. *Id.* The Order was calculated utilizing Plaintiff's adjusted monthly net income of $2,115.00 and Defendant's adjusted monthly net income of $6,961.00 including his wages, rental income and business income as recommended by the conference officer. *Id.* Plaintiff was ordered to provide medical insurance coverage, and any unreimbursed medical

39

expenses were allocated at 77% to Defendant and 23% to Plaintiff. Judge Roscioli noted that the award was entered solely for Alimony Pendente Lite ("APL") for the period of May 29, 2018 through July 1, 2018 for the amount of $1,548.00 for basic support. *Id.* The ongoing award was effective July 2, 2018 and was allocated $2,293.00 for the basic support of 6 children and $473.00 per month basic support for APL. *Id.* The APL was set to terminate on May 29, 2020 absent a request indicating the need for continued support, and APL could terminate earlier if the parties reached a settlement or if ordered by the Court. *Id.*

On September 11, 2018, Plaintiff timely filed a written demand for hearing de novo before the Court to reconsider the Order of Court dated August 17, 2018. On September 13, 2018, the parties were ordered to appear for a de novo hearing on October 15, 2018. On September 20, 2018, counsel for Plaintiff filed a Praecipe for Separate Hearing Listing, requesting that an Order be entered permitting the parties to take depositions and requesting to continue the October 15, 2018 de novo hearing because: 1) there were complex issues involving Defendant's income, 2) the hearing would be protracted, and 3) Plaintiff intended to take discovery.

On October 1, 2018, Judge Roscioli entered an Order denying Plaintiff's request for a protracted hearing and directing the parties to

40

develop all testimony and evidence in support of offers of poof by deposition. See Order, *Giles, supra*. (C.P. Northampton 10/1/2018). The October 15, 2018 de novo hearing was continued to December 17, 2018. *Id*.

On October 2, 2018, conference officer Nicole Lockhart sent a Notice of Non-Compliance to Defendant, directing Defendant to submit payment of $3,042.00 for September support within 10 days and directing him to comply with the Order of August 17, 2018.

On December 5, 2018, the parties requested that the matter be continued to allow additional time to take depositions. That request was granted by the undersigned, and the case was scheduled for a hearing to occur on February 13, 2019. Also on December 5, 2018, the undersigned granted Plaintiff's Motion to Compel Discovery and directed Defendant to provide full and complete responses to Plaintiff's Request for Production of Documents within 5 days of the date of the Order.

On February 13, 2019, counsel for the parties appeared before the undersigned. On that date, the undersigned entered an Order of Court in accordance with the discussion at the time of the hearing, directing the parties to submit depositions and briefs to the Domestic Relations Section within 60 days, after which further disposition would be made by the Court. See Order of Court, *Giles, supra*. (C.P.

41

Northampton 2/13/2019).

On April 15, 2019, counsel for the parties submitted their respective briefs. Counsel also submitted the transcript of the deposition of Plaintiff, taken February 8, 2019, the deposition of Defendant, taken February 1, 2019, the deposition of the parties' CPA, C. Jane Bachman, taken on February 8, 2019, and the deposition of Jennifer Nauman, a paralegal at Plaintiff's counsel's office, taken on February 1, 2019. After review of the file and the parties' submissions, on May 3, 2019, the undersigned entered the Order of Court, making the August 17, 2018 Order final. See Order of Court, *Giles*, *supra*. (C.P. Northampton 5/3/2019).

On May 30, 2019, Plaintiff filed her Notice of Appeal of the May 3, 2019 Order. On May 31, 2019, we entered an Order of Court directing the filing of a Statement of Errors Complained of On Appeal within 21 days. On June 11, 2019, Plaintiff filed her Concise Statement of the Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). In her Statement of Errors, Plaintiff raised two (2) alleged errors, stating as follows:

> 1. The Trial Court committed an error of law and/or abused its discretion in calculating Defendant's personal disposable income based upon federally taxed income for Federal tax year 2017 rather than actual cash flow.
>
> 2. The Trial Court committed an error of law and/or abused its discretion in calculating Defendant's disposable business income through Hire A Husband, Inc. based upon federally

42

taxed income for Federal tax year 2017 rather than actual cash flow.

See Concise Statement of Errors Complained Of On Appeal, *Giles*, *supra*. (C.P. Northampton 6/11/2019).

## Discussion

It is respectfully submitted that Plaintiff's appeal is without merit and should be dismissed. The two errors raised by Plaintiff are essentially one and the same, specifically, that we erred or abused our discretion in calculating Defendant's support obligation utilizing the amounts listed in Defendant's personal and corporate Federal tax returns as opposed to his alleged "actual cash flow." Based upon the record in this matter, it was not an error of law or an abuse of discretion to calculate Defendant's support obligation utilizing the amounts included on his 2017 personal and corporate tax returns. It was, therefore, not an error of law or an abuse of discretion to enter the May 3, 2019 Order making the August 17, 2018 Order final.

### Scope and standard of review

It is well established that "[i]n reviewing an order entered in a support proceeding, an appellate court has a limited scope of review." *Kotzbauer v. Kotzbauer*, 937 A.2d 487, 489 (Pa. Super. 2007), quoting *Commonwealth ex rel. Cann v. Cann*, 418 A.2d 403, 404–405 (Pa. Super. 1980). When reviewing an order regarding spousal support, the Superior Court "may reverse a support order only where the order

43

cannot be sustained on any valid ground. Absent an abuse of discretion or insufficient evidence to sustain the support order, this court will not interfere with the broad discretion afforded the trial court." *Strawn v. Strawn*, 664 A.2d 129, 131 (Pa. Super. 1995), quoting *McKolanis v. McKolanis*, 644 A.2d 1256 (Pa. Super. 1994). It is also well established that the Superior Court's scope of review is limited in child support cases. See *Haley v. Haley*, 549 A.2d 1316, 1317 (Pa. Super. 1988). It is within the trial court's discretion to determine the amount of a child support Order, and its judgment should not be disturbed on appeal absent a clear abuse of discretion. *Id.*, quoting *Ritter v. Ritter*, 518 A.2d 319, 322 (Pa. Super. 1986). "On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award." *Id.* (internal citations omitted).

The Pennsylvania Supreme Court has stated as follows:

> "Abuse of discretion" is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment— one that is clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; and improvident

exercise of discretion; and error of law.

*McKolanis*, 644 A.2d at 106, citing *Commonwealth v. Powell*, 590 A.2d 1240, 1244 (Pa. 1991). A finding of abuse of discretion will be made only upon a showing of clear and convincing evidence. *Koller v. Koller*, 481 A.2d 1218 (Pa. Super. 1984). The role of an appellate court in support proceedings is limited, and a finding of abuse of discretion should not be made lightly. See *Haley*, 549 A.2d at 1317, citing *Hartley v. Hartley*, 528 A.2d 233 (Pa. Super. 1987); see also *Shindel v. Leedom*, 504 A.2d 353 (Pa. Super. 1986).

<u>Plaintiff's appeal is without merit.</u>

As set forth above, Plaintiff has essentially raised a single issue as to our May 3, 2019 Order that made final the August 17, 2018 Order, specifically, that we allegedly committed an error of law and/or abused our discretion in calculating Defendant's support obligation utilizing Defendant's federally taxed income as reflected in his 2017 personal and corporate federal income tax returns rather than Defendant's "actual cash flow." The record in this matter reflects that it was not an error of law or an abuse of discretion to use the amounts set forth in Defendant's 2017 personal and business tax returns to calculate his income for child support purposes because the tax returns accurately reflect Defendant's income and actual cash flow.

Plaintiff argues that the August 17, 2018 Order did not properly

45

calculate Defendant's disposable income. See Brief of Plaintiff at p. 7 et seq., *Giles*, *supra*. (C.P. Northampton 4/15/2019). Plaintiff argues that "[w]hen determining a support obligor's disposable income, federally taxed income is not the measure; it is the cash flow that ought to be considered." *Id.*, citing *Labar v. Labar*, 731 A.2d 1252 (Pa. 1999). Plaintiff further notes that "[d]eductions allowed under Federal tax law which do not represent actual reductions in personal income of a support obligor will not be allowed in the disposable income calculation." *Id.*, citing *Labar*, *supra*. Plaintiff also avers that "[i]t is actual available financial resources of the payor that must be considered not the often fictional financial picture that emerges after taking into account tax considerations." *Id.*, citing *Calabrese v. Calabrese*, 682 A.2d 393 (Pa. Super. 1996). Plaintiff's arguments are not persuasive based upon the record in this matter.

As noted above, the parties to the instant matter were both deposed, as was the parties' CPA. Defendant was deposed on February 1, 2019. See Notes of Transcript of Deposition of Dominic Giles (hereinafter "Defendant's Deposition"), *Giles*, *supra*. (C.P. Northampton 4/15/2019). Defendant testified that he operates the handyman business, "Hire-a-Husband", based in Allentown. See Defendant's Deposition at 4:20-25. Defendant engages in handyman and light construction work including handing drywall, painting,

46

landscaping, and home repair. *Id.* at 5:3-7. Defendant has been the owner/operator of the business since 2001. *Id.* at 5:8-11. Defendant identified his personal and corporate federal tax returns for 2017 as Plaintiff's Exhibits 1 and 2. *Id.* at 5:12-20. On the corporate tax return for Hire-A-Husband, Defendant identified the gross receipts from sales in the amount of $243,452.00 on line 1 under income, and the cost of goods sold as $101,726.00 on line 2. *Id.* at 8:10-23. Defendant testified that he did not have documentation to substantiate the cost of goods sold for 2017. *Id.* at 9:24-10:3. Defendant testified that the calculation of the cost of goods was a "guesstimate". *Id.* at 10:10-13. Defendant testified that line number 17 on the corporate return, "compensation of officers", reflected the $35,667.00 income he received from Hire-A-Husband. *Id.* at 10:20-11:7. The corporate return reflected $83,105.00 in other deductions. *Id.* at 11:8-16. The itemization of those deductions included $7,415.00 for automobile expenses (*Id.* at 11:17-20), $19.106.00 for waste removal/dumpsters (*Id.* at 13:16-23), $934.00 for insurance (*Id.* at 14:8-12), and $55,000.00 for day laborers (*Id.* at 14:19-21). All of the laborers for Hire-A-Husband are paid between $10.00 and $13.00 per hour in cash, and no 1099 or W-2 forms are provided to them. *Id.* at 15:2-22.

Defendant indicated that he had 3 bank accounts at BB&T: one in his name, one in his name doing business as Hire-A-Husband, and

47

one joint account with Plaintiff. *Id.* at 16:11-17:17. Defendant testified that the expenses of the business were paid mostly out of the business bank account but that some of the expenses were paid out of his personal account. *Id.* at 17:18-24. Plaintiff's Exhibit 7, an accounting of the Hire-A-Husband account, was identified and discussed, with Defendant identifying the total deposits totaling $245,728.53 and the total withdrawals totaling $224,352.63. *Id.* at 18:13-24. Defendant agreed with Plaintiff's counsel that the total deposits reflected on the accounting and the gross receipts on the corporate tax return were approximately $2,000.00 different. *Id.* at 19:10-19. After not being to able identify a variety of checks written from the various accounts, Defendant testified that $117,000.00 had been transferred from the Hire-A-Husband Account into the joint account. *Id.* at 32:20-23.

Turning to his personal return, Defendant testified that line 7 of his return reflected $42,614.00 in wages, salary, and tips. *Id.* at 32:24-33:4. That amount included his Hire-A-Husband salary and the payment from Blue Mountain of wages totaling $6,947.08. *Id.* at 33:5-34:1. Defendant also reported $9,158.00 of business income from his work as a real estate agent. *Id.* at 34:2-7. This consisted of $19,782.00 in gross receipts/commissions less expenses. *Id.* at 34:19-25. Defendant also reported $13,594.00 in rental income. *Id.*

48

at 39:3-6. That amount reflected the various properties rental income, minus taxes, expenses, repairs and other associated costs. *Id.* at 39:7-45:9.

Defendant also testified that he paid Plaintiff's car payment in the amount of approximately $600.00 per month. *Id.* at 50:2-3;24-25. Defendant testified that Plaintiff does not make any deposits that he is aware of into the joint account. *Id.* at 51:7-9. Defendant indicated that during their marriage, he and Plaintiff would routinely file joint tax returns using the same accountant. *Id.* at 54:7-16. Defendant testified that his method of providing information to the accountant over those 13 years remained consistent. *Id.* at 54:17-24. Defendant stated that he believed both he and his wife would go to the accountant to sign the joint returns separately. *Id.* at 55:6-10.

The deposition of the parties' CPA, Ms. C. Jane Bachman, was taken on February 8, 2019. See Notes of Transcript of Deposition of C. Jane Bachman, CPA (hereinafter "CPA Deposition"), *Giles, supra.* (C.P. Northampton 4/15/2019). Ms. Bachman testified that she has prepared income taxes as an accountant for 35 years. CPA Deposition at 4:16-5:2. Ms. Bachman testified that she has been preparing tax returns for Plaintiff and Defendant and for Hire-A-Husband since approximately 2001. *Id.* at 5:6-22. Ms. Bachman identified the 2017 tax documents identified as Plaintiff's Exhibit 2. *Id.* at 7:7-20. Ms.

Bachman identified the sales reported as $243.452.00 and indicated that that number was provided to her by Defendant. *Id.* at 8:12-18. Ms. Bachman did not prepare any calculations to establish that sales number. *Id.* at 8:19-21. Ms. Bachman indicated that the sales number had no input in the calculation of the materials/cost of goods sold amount of $101,726.00 that was listed in the corporate return. *Id.* at 9:11-12. Ms. Bachman said that she did "some work" because she wants it to make sense and doesn't want Defendant to "go off the deep end" because "he's probably not the best bookkeeper." *Id.* at 9:17-20. Ms. Bachman did testify that she had some input into Defendant's listed wages received from Hire-A-Husband because:

> [She was] just trying to get him to have enough wages to be okay with the IRS. They require that S-corp owners take at least a salary. It is supposed to be equal to what their fair market value is. Most of them take as little as possible because they have to pay FICA. So I probably gave those numbers.

*Id.* at 10:13-21.

As to the rental property income, Ms. Bachman testified that she would have to call Defendant to get figures to put in the tax returns, and he would provide her with the numbers to put in the returns. *Id.* at 11:5-12. Ms. Bachman noted that Defendant did not provide her with documentation to substantiate the numbers he provided her, and she never asked him to. *Id.* at 11:24-12:2. Ms. Bachman did not specifically recall more than one occasion prior to the 2017 return,

50

when Plaintiff signed the parties' joint tax returns, and she indicated that Defendant handled the taxes. *Id.* at 12:15-13:7.

Plaintiff's deposition was taken on February 8, 2019. See Notes of Transcript Deposition of Suzanne Giles (hereinafter "Plaintiff's Deposition"), *Giles*, *supra*. (C.P. Northampton 4/15/2019). Plaintiff testified that, prior to 2017, she was aware of the existence of joint returns that were being filed on behalf of Plaintiff and Defendant and that she was aware they were filed by Ms. Bachman. See Plaintiff's Deposition at 5:24-6:8. Plaintiff testified that Defendant was and has been engaged in the same business throughout their marriage, including the handyman work, the rental properties and real estate sales. *Id.* at 12:8-19. Plaintiff testified that Defendant is a diligent worker. *Id.* at 12:20-24.

In *Cunningham v. Cunningham*, 548 A.2d 611 (Pa. Super. 1988), the Superior Court stated as follows:

> It is well established that depreciation and depletion expenses, permitted under federal income tax law without proof of actual loss, will not automatically be deducted from gross income for purposes of determining awards of alimony and equitable distribution. In determining the financial responsibilities of the parties to a dissolving marriage, the court looks to the actual disposable income of the parties . . . Depreciation and depletion expenses should be deducted from gross income only where they reflect an actual reduction in the personal income of the party claiming the deductions, such as where, e.g., he or she actually expends funds to replace worn equipment or purchase new reserves.

51

*Cunningham v. Cunningham*, 548 A.2d 611, 612-613 (Pa. Super.

1988)(emphasis added). Pa.R.C.P. No. 1910.16-2, titled "Support

Guidelines. Calculation of Monthly Net Income" provides, in relevant

part, as follows:

> Generally, the support amount awarded is based on the parties' monthly net income.
> **(a) Monthly Gross Income.** Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term "income" and includes income from any source. The statute lists many types of income including, but not limited to:
> (1) wages, salaries, bonuses, fees, and commissions;
> (2) net income from business or dealings in property;
> (3) interest, rents, royalties, and dividends;
> (4) pensions and all forms of retirement;
> (5) income from an interest in an estate or trust;
> (6) Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation, and unemployment compensation;
> (7) alimony if, in the trier-of-fact's discretion, inclusion of part or all of it is appropriate; and
> *Note:* In determining the appropriateness of including alimony in gross income, the trier-of-fact shall consider whether the party receiving the alimony must include the amount received as gross income when filing his or her federal income taxes. If the alimony is not includable in the party's gross income for federal income tax purposes, the trier-of-fact may include in the party's monthly net income the alimony received, as appropriate. *See* Pa.R.C.P. No. 1910.16-2(c)(2)(ii).
> Since the reasons for ordering payment of alimony vary, the appropriateness of including it in the recipient's gross income must also vary. For example, if the obligor is paying $1,000 per month in alimony for the express purpose of financing the obligee's college education, it would be inappropriate to consider that alimony as income from which the obligee could provide child support. However, if alimony is intended to finance the obligee's

general living expenses, inclusion of the alimony as income is appropriate.

(8) other entitlements to money or lump sum awards, without regard to source, including:

(i) lottery winnings;
(ii) income tax refunds;
(iii) insurance compensation or settlements;
(iv) awards and verdicts; and
(v) payments due to and collectible by an individual regardless of source.

Pa.R.C.P. No. 1910.16-2(a).

Upon review of the entirety of the file, the parties' briefs in support of their respective positions, and the depositions taken in this matter, the August 17, 2018 Order properly took into account each of the parties' incomes appropriately. Contrary to Plaintiff's assertions, the August 17, 2018 Order properly calculated Defendant's disposable income in accordance with Pa.R.R.P. No. 1910-16.2 by utilizing Defendant's federal personal and corporate tax returns. While we agree with Ms. Bachman that Defendant may not be the strongest bookkeeper, the process utilized to produce Defendant's corporate and personal income tax returns was consistent for 16 years. Each of the deductions claimed in Defendant's corporate and personal tax returns appeared to reflect an actual reduction in Defendant's personal income. Therefore, each of the deductions discussed herein were appropriately considered in determining Defendant's disposable income for child support and APL calculation purposes. Thus, it was not an error of law or abuse of discretion to utilize the tax returns to calculate

53

Defendant's support obligation. See *Cunningham*, *supra*.

As noted above, Plaintiff's 2017 federal tax return was submitted to the DRS accountant for review, as were Defendant's federal individual and corporate returns. After examination by the DRS accountant, it was determined that Plaintiff had an adjusted monthly net income of $2,115.00. See Summary of Trier of Fact, *Giles, supra*. (C.P. Northampton 7/26/2018). The conference officer requested that Defendant's returns be reviewed in "multiple ways". *Id*. at 2. The DRS staff accountant determined that Defendant's rental income and wages resulted in an adjusted net monthly income of $4,388.00. *Id*. Per the staff accountant's review of Defendant's business income from Hire-A-Husband, Defendant had an adjusted net monthly income of $2,583.00. Per review of the rental income only, Defendant had an adjusted net monthly income of $1,758.00. *Id*. On review of Defendant's business income only and the rental income, the DRS accountant determined that Defendant had an adjusted monthly net income of $5,204.00. *Id*. The conference officer noted that "[i]t is unknown to this office what the defendant's actual wages would be had had paid himself a salary that reflected his actual earnings"; however, the conference officer recommended that Defendant's income be based on the DRS accountant's findings of Defendant's wages and rental income, totaling $4,388.00 per month, plus the

54

business income of $2,573.00 per month. *Id.* This resulted in an adjusted monthly net income for Defendant of $6,961.00. *Id.* at 2. The above incomes were then properly utilized in calculating Defendant's support obligation in accordance with the guidelines and formula set forth in Pa.R.C.P. No. 1910.16-1 through 1910.16-4. In accordance with that calculation, Defendant was ordered to pay $3,042.00 per month, allocated $2,766.00 for current support and $276.00 for arrears. See Order of Court, *Giles, supra.* (C.P. Northampton 8/17/2018). These calculations were not errors of law, and we did not abuse our discretion in entering the August 17, 2018 Order. Therefore, it was not an error of law or abuse of discretion to enter the May 3, 2019 Order making the August 17, 2018 Order final.

## Conclusion

It is respectfully suggested that Plaintiff's appeal is without merit. Defendant's income was properly calculated for support purposes, utilizing his 2017 federal personal and corporate income tax returns that reflected his actual, disposable income.

BY THE COURT

JENNIFER R. SLETVOLD, J.

55